(Slip Opinion)          OCTOBER TERM, 2014          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## YATES *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 13–7451.   Argued November 5, 2014—Decided February 25, 2015

While conducting an offshore inspection of a commercial fishing vessel in the Gulf of Mexico, a federal agent found that the ship's catch contained undersized red grouper, in violation of federal conservation regulations.  The officer instructed the ship's captain, petitioner Yates, to keep the undersized fish segregated from the rest of the catch until the ship returned to port.  After the officer departed, Yates instead told a crew member to throw the undersized fish overboard.  For this offense, Yates was charged with destroying, concealing, and covering up undersized fish to impede a federal investigation, in violation of 18 U. S. C. §1519.  That section provides that a person may be fined or imprisoned for up to 20 years if he "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence" a federal investigation.  At trial, Yates moved for a judgment of acquittal on the §1519 charge.  Pointing to §1519's origin as a provision of the Sarbanes-Oxley Act of 2002, a law designed to protect investors and restore trust in financial markets following the collapse of Enron Corporation, Yates argued that §1519's reference to "tangible object" subsumes objects used to store information, such as computer hard drives, not fish.  The District Court denied Yates's motion, and a jury found him guilty of violating §1519.  The Eleventh Circuit affirmed the conviction, concluding that §1519 applies to the destruction or concealment of fish because, as objects having physical form, fish fall within the dictionary definition of "tangible object."

*Held*: The judgment is reversed, and the case is remanded.

733 F. 3d 1059, reversed and remanded.

JUSTICE GINSBURG, joined by THE CHIEF JUSTICE, JUSTICE BREYER, and JUSTICE SOTOMAYOR, concluded that a "tangible object" within §1519's compass is one used to record or preserve information. Pp. 6–20.

(a) Although dictionary definitions of the words "tangible" and "object" bear consideration in determining the meaning of "tangible object" in §1519, they are not dispositive. Whether a statutory term is unambiguous "is determined [not only] by reference to the language itself, [but also by] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341. Identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute. See, *e.g., FAA* v. *Cooper*, 566 U. S. ___, ___. Pp. 7–10.

(b) Familiar interpretive guides aid the construction of "tangible object." Though not commanding, §1519's heading—"Destruction, alteration, or falsification of records in Federal investigations and bankruptcy"—conveys no suggestion that the section prohibits spoliation of any and all physical evidence, however remote from records.

Section 1519's position within Title 18, Chapter 73, further signals that §1519 was not intended to serve as a cross-the-board ban on the destruction of physical evidence. Congress placed §1519 at the end of Chapter 73 following immediately after pre-existing specialized provisions expressly aimed at corporate fraud and financial audits.

The contemporaneous passage of §1512(c)(1), which prohibits a person from "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding," is also instructive. The Government argues that §1512(c)(1)'s reference to "other object" includes any and every physical object. But if §1519's reference to "tangible object" already included all physical objects, as the Government also contends, then Congress had no reason to enact §1512(c)(1). Section 1519 should not be read to render superfluous an entire provision passed in proximity as part of the same Act. See *Marx* v. *General Revenue Corp.*, 568 U. S. ___, ___.

The words immediately surrounding "tangible object" in §1519— "falsifies, or makes a false entry in any record [or] document"—also cabin the contextual meaning of that term. Applying the canons *noscitur a sociis* and *ejusdem generis*, "tangible object," as the last in a list of terms that begins "any record [or] document," is appropriately read to refer, not to any tangible object, but specifically to the subset of tangible objects used to record or preserve information. This moderate interpretation accords with the list of actions §1519 proscribes; the verbs "falsif[y]" and "mak[e] a false entry in" typically

take as grammatical objects records, documents, or things used to record or preserve information, such as logbooks or hard drives. See *Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 575.

Use of traditional tools of statutory interpretation to examine markers of congressional intent within the Sarbanes-Oxley Act and §1519 itself thus call for rejection of an aggressive interpretation of "tangible object."

Furthermore, the meaning of "record, document, or thing" in a provision of the 1962 Model Penal Code (MPC) that has been interpreted to prohibit tampering with any kind of physical evidence is not a reliable indicator of the meaning Congress assigned to "record, document, or tangible object" in §1519. There are significant differences between the offense described by the MPC provision and the offense created by §1519. Pp. 10–18.

(c) Finally, if recourse to traditional tools of statutory construction leaves any doubt about the meaning of "tangible object" in §1519, it would be appropriate to invoke the rule of lenity. Pp. 18–19.

JUSTICE ALITO concluded that traditional rules of statutory construction confirm that Yates has the better argument. Title 18 U. S. C. §1519's list of nouns, list of verbs, and title, when combined, tip the case in favor of Yates. Applying the canons *noscitur a sociis* and *ejusdem generis* to the list of nouns—"any record, document, or tangible object"—the term "tangible object" should refer to something similar to records or documents. And while many of §1519's verbs— "alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in"—could apply to far-flung nouns such as salamanders or sand dunes, the term "makes a false entry in" makes no sense outside of filekeeping. Finally, §1519's title—"Destruction, alteration, or falsification of records in Federal investigations and bankruptcy"— also points toward filekeeping rather than fish. Pp. 1–4.

GINSBURG, J., announced the judgment of the Court and delivered an opinion, in which ROBERTS, C. J., and BREYER and SOTOMAYOR, JJ., joined. ALITO, J., filed an opinion concurring in the judgment. KAGAN, J., filed a dissenting opinion, in which SCALIA, KENNEDY, and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–7451

JOHN L. YATES, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[February 25, 2015]

JUSTICE GINSBURG announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE BREYER, and JUSTICE SOTOMAYOR join.

John Yates, a commercial fisherman, caught undersized red grouper in federal waters in the Gulf of Mexico. To prevent federal authorities from confirming that he had harvested undersized fish, Yates ordered a crew member to toss the suspect catch into the sea. For this offense, he was charged with, and convicted of, violating 18 U. S. C. §1519, which provides:

> "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both."

Yates was also indicted and convicted under §2232(a), which provides:

"DESTRUCTION OR REMOVAL OF PROPERTY TO PREVENT SEIZURE.—Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both."

Yates does not contest his conviction for violating §2232(a), but he maintains that fish are not trapped within the term "tangible object," as that term is used in §1519.

Section 1519 was enacted as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745, legislation designed to protect investors and restore trust in financial markets following the collapse of Enron Corporation. A fish is no doubt an object that is tangible; fish can be seen, caught, and handled, and a catch, as this case illustrates, is vulnerable to destruction. But it would cut §1519 loose from its financial-fraud mooring to hold that it encompasses any and all objects, whatever their size or significance, destroyed with obstructive intent. Mindful that in Sarbanes-Oxley, Congress trained its attention on corporate and accounting deception and cover-ups, we conclude that a matching construction of §1519 is in order: A tangible object captured by §1519, we hold, must be one used to record or preserve information.

## I

On August 23, 2007, the *Miss Katie*, a commercial fishing boat, was six days into an expedition in the Gulf of

Mexico. Her crew numbered three, including Yates, the captain. Engaged in a routine offshore patrol to inspect both recreational and commercial vessels, Officer John Jones of the Florida Fish and Wildlife Conservation Commission decided to board the *Miss Katie* to check on the vessel's compliance with fishing rules. Although the *Miss Katie* was far enough from the Florida coast to be in exclusively federal waters, she was nevertheless within Officer Jones's jurisdiction. Because he had been deputized as a federal agent by the National Marine Fisheries Service, Officer Jones had authority to enforce federal, as well as state, fishing laws.

Upon boarding the *Miss Katie*, Officer Jones noticed three red grouper that appeared to be undersized hanging from a hook on the deck. At the time, federal conservation regulations required immediate release of red grouper less than 20 inches long. 50 CFR §622.37(d)(2)(ii) (effective April 2, 2007). Violation of those regulations is a civil offense punishable by a fine or fishing license suspension. See 16 U. S. C. §§1857(1)(A), (G), 1858(a), (g).

Suspecting that other undersized fish might be on board, Officer Jones proceeded to inspect the ship's catch, setting aside and measuring only fish that appeared to him to be shorter than 20 inches. Officer Jones ultimately determined that 72 fish fell short of the 20-inch mark. A fellow officer recorded the length of each of the undersized fish on a catch measurement verification form. With few exceptions, the measured fish were between 19 and 20 inches; three were less than 19 inches; none were less than 18.75 inches. After separating the fish measuring below 20 inches from the rest of the catch by placing them in wooden crates, Officer Jones directed Yates to leave the fish, thus segregated, in the crates until the *Miss Katie* returned to port. Before departing, Officer Jones issued Yates a citation for possession of undersized fish.

Four days later, after the *Miss Katie* had docked in

Cortez, Florida, Officer Jones measured the fish contained in the wooden crates. This time, however, the measured fish, although still less than 20 inches, slightly exceeded the lengths recorded on board. Jones surmised that the fish brought to port were not the same as those he had detected during his initial inspection. Under questioning, one of the crew members admitted that, at Yates's direction, he had thrown overboard the fish Officer Jones had measured at sea, and that he and Yates had replaced the tossed grouper with fish from the rest of the catch.

For reasons not disclosed in the record before us, more than 32 months passed before criminal charges were lodged against Yates. On May 5, 2010, he was indicted for destroying property to prevent a federal seizure, in violation of §2232(a), and for destroying, concealing, and covering up undersized fish to impede a federal investigation, in violation of §1519.[1] By the time of the indictment, the minimum legal length for Gulf red grouper had been lowered from 20 inches to 18 inches. See 50 CFR §622.37(d)(2)(iv) (effective May 18, 2009). No measured fish in Yates's catch fell below that limit. The record does not reveal what civil penalty, if any, Yates received for his possession of fish undersized under the 2007 regulation. See 16 U. S. C. §1858(a).

Yates was tried on the criminal charges in August 2011. At the end of the Government's case in chief, he moved for a judgment of acquittal on the §1519 charge. Pointing to §1519's title and its origin as a provision of the Sarbanes-Oxley Act, Yates argued that the section sets forth "a documents offense" and that its reference to "tangible object[s]" subsumes "computer hard drives, logbooks, [and] things of that nature," not fish. App. 91–92. Yates

——————

[1] Yates was also charged with making a false statement to federal law enforcement officers, in violation of 18 U. S. C. §1001(a)(2). That charge, on which Yates was acquitted, is not relevant to our analysis.

acknowledged that the Criminal Code contains "sections that would have been appropriate for the [G]overnment to pursue" if it wished to prosecute him for tampering with evidence. App. 91. Section 2232(a), set out *supra,* at 1–2, fit that description. But §1519, Yates insisted, did not.

The Government countered that a "tangible object" within §1519's compass is "simply something other than a document or record." App. 93. The trial judge expressed misgivings about reading "tangible object" as broadly as the Government urged: "Isn't there a Latin phrase [about] construction of a statute . . . . The gist of it is . . . you take a look at [a] line of words, and you interpret the words consistently. So if you're talking about documents, and records, tangible objects are tangible objects in the nature of a document or a record, as opposed to a fish." *Ibid.* The first-instance judge nonetheless followed controlling Eleventh Circuit precedent. While recognizing that §1519 was passed as part of legislation targeting corporate fraud, the Court of Appeals had instructed that "the broad language of §1519 is not limited to corporate fraud cases, and 'Congress is free to pass laws with language covering areas well beyond the particular crisis *du jour* that initially prompted legislative action.'" No. 2:10–cr–66–FtM–29SPC (MD Fla., Aug. 8, 2011), App. 116 (quoting *United States* v. *Hunt*, 526 F. 3d 739, 744 (CA11 2008)). Accordingly, the trial court read "tangible object" as a term "independent" of "record" or "document." App. 116. For violating §1519 and §2232(a), the court sentenced Yates to imprisonment for 30 days, followed by supervised release for three years. App. 118–120. For life, he will bear the stigma of having a federal felony conviction.

On appeal, the Eleventh Circuit found the text of §1519 "plain." 733 F. 3d 1059, 1064 (2013). Because "tangible object" was "undefined" in the statute, the Court of Appeals gave the term its "ordinary or natural meaning," *i.e.*, its dictionary definition, "[h]aving or possessing physical

form." *Ibid.* (quoting Black's Law Dictionary 1592 (9th ed. 2009)).

We granted certiorari, 572 U. S. ___ (2014), and now reverse the Eleventh Circuit's judgment.

II

The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents.    The Government acknowledges that §1519 was intended to prohibit, in particular, corporate document-shredding to hide evidence of financial wrongdoing.  Brief for United States 46.  Prior law made it an offense to "intimidat[e], threate[n], or corruptly persuad[e] *another person*" to shred documents.  §1512(b) (emphasis added).  Section 1519 cured a conspicuous omission by imposing liability on a person who destroys records himself.  See S. Rep. No. 107–146, p. 14 (2002) (describing §1519 as "a new general anti shredding provision" and explaining that "certain current provisions make it a crime to persuade another person to destroy documents, but not a crime to actually destroy the same documents yourself").  The new section also expanded prior law by including within the provision's reach "any matter within the jurisdiction of any department or agency of the United States." *Id.*, at 14–15.

In the Government's view, §1519 extends beyond the principal evil motivating its passage.  The words of §1519, the Government argues, support reading the provision as a general ban on the spoliation of evidence, covering all physical items that might be relevant to any matter under federal investigation.

Yates urges a contextual reading of §1519, tying "tangible object" to the surrounding words, the placement of the provision within the Sarbanes-Oxley Act, and related

provisions enacted at the same time, in particular §1520 and §1512(c)(1), see *infra*, at 10, 12–13. Section 1519, he maintains, targets not all manner of evidence, but records, documents, and tangible objects used to preserve them, *e.g.*, computers, servers, and other media on which information is stored.

We agree with Yates and reject the Government's unrestrained reading. "Tangible object" in §1519, we conclude, is better read to cover only objects one can use to record or preserve information, not all objects in the physical world.

## A

The ordinary meaning of an "object" that is "tangible," as stated in dictionary definitions, is "a discrete . . . thing," Webster's Third New International Dictionary 1555 (2002), that "possess[es] physical form," Black's Law Dictionary 1683 (10th ed. 2014). From this premise, the Government concludes that "tangible object," as that term appears in §1519, covers the waterfront, including fish from the sea.

Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997). See also *Deal* v. *United States*, 508 U. S. 129, 132 (1993) (it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"). Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.

We have several times affirmed that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute. See, *e.g., FAA* v. *Cooper*, 566 U. S. ___, ___–___ (2012), (slip op., at 6–7) ("actual damages" has different meanings in different statutes); *Wachovia Bank, N. A.* v. *Schmidt*, 546 U. S. 303, 313–314 (2006) ("located" has different meanings in different provisions of the National Bank Act); *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581, 595–597 (2004) ("age" has different meanings in different provisions of the Age Discrimination in Employment Act of 1967); *United States* v. *Cleveland Indians Baseball Co.*, 532 U. S. 200, 213 (2001) ("wages paid" has different meanings in different provisions of Title 26 U. S. C.); *Robinson*, 519 U. S*.,* at 342–344 ("employee" has different meanings in different sections of Title VII of the Civil Rights Act of 1964); *Merrell Dow Pharmaceuticals Inc.* v. *Thompson*, 478 U. S. 804, 807–808 (1986) ("arising under" has different meanings in U. S. Const., Art. III, §2, and 28 U. S. C. §1331); *District of Columbia* v. *Carter*, 409 U. S. 418, 420–421 (1973) ("State or Territory" has different meanings in 42 U. S. C. §1982 and §1983); *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U. S. 427, 433–437 (1932) ("trade or commerce" has different meanings in different sections of the Sherman Act). As the Court observed in *Atlantic Cleaners & Dyers*, 286 U. S., at 433:

> "Most words have different shades of meaning and consequently may be variously construed . . . . Where the subject matter to which the words refer is not the same in the several places where [the words] are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law, to be arrived at by a

consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed."[2]

In short, although dictionary definitions of the words "tangible" and "object" bear consideration, they are not dispositive of the meaning of "tangible object" in §1519.

Supporting a reading of "tangible object," as used in §1519, in accord with dictionary definitions, the Government points to the appearance of that term in Federal Rule of Criminal Procedure 16. That Rule requires the prosecution to grant a defendant's request to inspect "tangible objects" within the Government's control that have utility for the defense. See Fed. Rule Crim. Proc. 16(a)(1)(E).

Rule 16's reference to "tangible objects" has been interpreted to include any physical evidence. See 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §20.3(g), pp. 405–406, and n. 120 (3d ed. 2007). Rule 16 is a discovery rule designed to protect defendants by compelling the prosecution to turn over to the defense evidence material to the charges at issue. In that context, a comprehensive construction of "tangible objects" is fitting. In contrast, §1519 is a penal provision that refers to "tangible object" not in relation to a request for information relevant to a specific court proceeding, but rather in relation to federal investigations or proceedings of every kind, including those not yet begun.[3] See *Commissioner* v. *National Carbide Corp.*, 167 F. 2d 304, 306 (CA2 1948) (Hand, J.)

_____

[2] The dissent assiduously ignores all this, *post*, at 11–12, in insisting that Congress wrote §1519 to cover, along with shredded corporate documents, red grouper slightly smaller than the legal limit.

[3] For the same reason, we do not think the meaning of "tangible objects" (or "tangible things," see Fed. Rule Civ. Proc. 26(b)) in other discovery prescriptions cited by the Government leads to the conclusion that "tangible object" in §1519 encompasses any and all physical evidence existing on land or in the sea.

("words are chameleons, which reflect the color of their environment"). Just as the context of Rule 16 supports giving "tangible object" a meaning as broad as its dictionary definition, the context of §1519 tugs strongly in favor of a narrower reading.

B

Familiar interpretive guides aid our construction of the words "tangible object" as they appear in §1519.

We note first §1519's caption: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy." That heading conveys no suggestion that the section prohibits spoliation of any and all physical evidence, however remote from records. Neither does the title of the section of the Sarbanes-Oxley Act in which §1519 was placed, §802: "Criminal penalties for altering documents." 116 Stat. 800. Furthermore, §1520, the only other provision passed as part of §802, is titled "Destruction of corporate audit records" and addresses only that specific subset of records and documents. While these headings are not commanding, they supply cues that Congress did not intend "tangible object" in §1519 to sweep within its reach physical objects of every kind, including things no one would describe as records, documents, or devices closely associated with them. See *Almendarez-Torres* v. *United States*, 523 U. S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)). If Congress indeed meant to make §1519 an all-encompassing ban on the spoliation of evidence, as the dissent believes Congress did, one would have expected a clearer indication of that intent.

Section 1519's position within Chapter 73 of Title 18 further signals that §1519 was not intended to serve as a cross-the-board ban on the destruction of physical evi-

dence of every kind.  Congress placed §1519 (and its companion provision §1520) at the end of the chapter, following immediately after the pre-existing §1516, §1517, and §1518, each of them prohibiting obstructive acts in specific contexts.  See §1516 (audits of recipients of federal funds); §1517 (federal examinations of financial institutions); §1518 (criminal investigations of federal health care offenses).  See also S. Rep. No. 107–146, at 7 (observing that §1517 and §1518 "apply to obstruction in certain limited types of cases, such as bankruptcy fraud, examinations of financial institutions, and healthcare fraud").

But Congress did not direct codification of the Sarbanes-Oxley Act's other additions to Chapter 73 adjacent to these specialized provisions.  Instead, Congress directed placement of those additions within or alongside retained provisions that address obstructive acts relating broadly to official proceedings and criminal trials:  Section 806, "Civil Action to protect against retaliation in fraud cases," was codified as §1514A and inserted between the pre-existing §1514, which addresses civil actions to restrain harassment of victims and witnesses in criminal cases, and §1515, which defines terms used in §1512 and §1513.  Section 1102, "Tampering with a record or otherwise impeding an official proceeding," was codified as §1512(c) and inserted within the pre-existing §1512, which addresses tampering with a victim, witness, or informant to impede any official proceeding.  Section 1107, "Retaliation against informants," was codified as §1513(e) and inserted within the pre-existing §1513, which addresses retaliation against a victim, witness, or informant in any official proceeding.  Congress thus ranked §1519, not among the broad proscriptions, but together with specialized provisions expressly aimed at corporate fraud and financial audits.  This placement accords with the view that Congress' conception of §1519's coverage was considerably

more limited than the Government's.[4]

The contemporaneous passage of §1512(c)(1), which was contained in a section of the Sarbanes-Oxley Act discrete from the section embracing §1519 and §1520, is also instructive. Section 1512(c)(1) provides:

> "(c) Whoever corruptly—
>
> "(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding
>
> .          .          .          .          .
>
> "shall be fined under this title or imprisoned not more than 20 years, or both."

The legislative history reveals that §1512(c)(1) was drafted and proposed after §1519. See 148 Cong. Rec. 12518, 13088–13089 (2002). The Government argues, and Yates does not dispute, that §1512(c)(1)'s reference to "other object" includes any and every physical object. But if §1519's reference to "tangible object" already included all physical objects, as the Government and the dissent contend, then Congress had no reason to enact §1512(c)(1): Virtually any act that would violate §1512(c)(1) no doubt would violate §1519 as well, for §1519 applies to "the

_____

[4] The dissent contends that nothing can be drawn from the placement of §1519 because, before and after Sarbanes-Oxley, "all of Chapter 73 was ordered chronologically." *Post*, at 9. The argument might have some force if the factual premise were correct. In Sarbanes-Oxley, Congress directed insertion of §1514A *before* §1518, then the last section in Chapter 73. If, as the dissent argues, Congress adopted §1519 to fill out §1512, *post*, at 6–7, it would have made more sense for Congress to codify the substance of §1519 within §1512 or in a new §1512A, rather than placing §1519 among specialized provisions. Notably, in Sarbanes-Oxley, Congress added §1512(c)(1), "a broad ban on evidence-spoliation," cf. *post*, at 9, n. 2, to §1512, even though §1512's preexisting title and provisions all related to witness-tampering.

investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter," not just to "an official proceeding."[5]

The Government acknowledges that, under its reading, §1519 and §1512(c)(1) "significantly overlap." Brief for United States 49. Nowhere does the Government explain what independent function §1512(c)(1) would serve if the Government is right about the sweeping scope of §1519. We resist a reading of §1519 that would render superfluous an entire provision passed in proximity as part of the same Act.[6] See *Marx* v. *General Revenue Corp.*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 14) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

The words immediately surrounding "tangible object" in §1519—"falsifies, or makes a false entry in any record [or]

_____

[5] Despite this sweeping "in relation to" language, the dissent remarkably suggests that §1519 does not "ordinarily operate in th[e] context [of] federal court[s]," for those courts are not "department[s] or agenc[ies]." *Post*, at 10. That suggestion, which, as one would expect, lacks the Government's endorsement, does not withstand examination. The Senate Committee Report on §1519, on which the dissent elsewhere relies, see *post*, at 6, explained that an obstructive act is within §1519's scope if "done 'in contemplation' of or in relation to a matter or investigation." S. Rep. 107–146, at 15. The Report further informed that §1519 "is . . . meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries, regardless of their title." *Ibid.* If any doubt remained about the multiplicity of contexts in which §1519 was designed to apply, the Report added, "[t]he intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function." *Ibid.*

[6] Furthermore, if "tangible object" in §1519 is read to include any physical object, §1519 would prohibit all of the conduct proscribed by §2232(a), which imposes a maximum penalty of five years in prison for destroying or removing "property" to prevent its seizure by the Government. See *supra,* at 1–2.

document"—also cabin the contextual meaning of that term. As explained in *Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 575 (1995), we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." (internal quotation marks omitted). See also *United States* v. *Williams*, 553 U. S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated"). In *Gustafson*, we interpreted the word "communication" in §2(10) of the Securities Act of 1933 to refer to a public communication, rather than any communication, because the word appeared in a list with other words, notably "notice, circular, [and] advertisement," making it "apparent that the list refer[red] to documents of wide dissemination." 513 U. S., at 575–576. And we did so even though the list began with the word "any."

The *noscitur a sociis* canon operates in a similar manner here. "Tangible object" is the last in a list of terms that begins "any record [or] document." The term is therefore appropriately read to refer, not to any tangible object, but specifically to the subset of tangible objects involving records and documents, *i.e.,* objects used to record or preserve information. See United States Sentencing Commission, Guidelines Manual §2J1.2, comment., n. 1 (Nov. 2014) ("'Records, documents, or tangible objects' includes (A) records, documents, or tangible objects that are stored on, or that are, magnetic, optical, digital, other electronic, or other storage mediums or devices; and (B) wire or electronic communications.").

This moderate interpretation of "tangible object" accords with the list of actions §1519 proscribes. The section applies to anyone who "alters, destroys, mutilates, conceals, covers up, *falsifies*, or *makes a false entry in* any record, document, or tangible object" with the requisite

obstructive intent. (Emphasis added.) The last two verbs, "falsif[y]" and "mak[e] a false entry in," typically take as grammatical objects records, documents, or things used to record or preserve information, such as logbooks or hard drives. See, *e.g.,* Black's Law Dictionary 720 (10th ed. 2014) (defining "falsify" as "[t]o make deceptive; to counterfeit, forge, or misrepresent; esp., to tamper with (a document, record, etc.)"). It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as "falsifying" the murder weapon. But it would not be strange to refer to "falsifying" data stored on a hard drive as simply "falsifying" a hard drive. Furthermore, Congress did not include on §1512(c)(1)'s list of prohibited actions "falsifies" or "makes a false entry in." See §1512(c)(1) (making it unlawful to "alte[r], destro[y], mutilat[e], or concea[l] a record, document, or other object" with the requisite obstructive intent). That contemporaneous omission also suggests that Congress intended "tangible object" in §1519 to have a narrower scope than "other object" in §1512(c)(1).[7]

A canon related to *noscitur a sociis*, *ejusdem generis*, counsels: "Where general words follow specific words in a

---

[7] The dissent contends that "record, document, or tangible object" in §1519 should be construed in conformity with "record, document, or other object" in §1512(c)(1) because both provisions address "the same basic problem." *Post*, at 11–12. But why should that be so when Congress prohibited in §1519 additional actions, specific to paper and electronic documents and records, actions it did not prohibit in §1512(c)(1)? When Congress passed Sarbanes-Oxley in 2002, courts had already interpreted the phrase "alter, destroy, mutilate, or conceal an object" in §1512(b)(2)(B) to apply to all types of physical evidence. See, *e.g.*, *United States* v. *Applewhaite*, 195 F. 3d 679, 688 (CA3 1999) (affirming conviction under §1512(b)(2)(B) for persuading another person to paint over blood spatter). Congress' use of a formulation in §1519 that did not track the one used in §1512(b)(2)(B) (and repeated in §1512(c)(1)) suggests that Congress designed §1519 to be interpreted apart from §1512, not in lockstep with it.

statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Washington State Dept. of Social and Health Servs.* v. *Guardianship Estate of Keffeler*, 537 U. S. 371, 384 (2003) (internal quotation marks omitted). In *Begay* v. *United States*, 553 U. S. 137, 142–143 (2008), for example, we relied on this principle to determine what crimes were covered by the statutory phrase "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U. S. C. §924(e)(2)(B)(ii). The enumeration of specific crimes, we explained, indicates that the "otherwise involves" provision covers "only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" 553 U. S., at 142. Had Congress intended the latter "all encompassing" meaning, we observed, "it is hard to see why it would have needed to include the examples at all." *Ibid.* See also *CSX Transp., Inc.* v. *Alabama Dept. of Revenue*, 562 U. S. 277, ___ (2011) (slip op., at 16) ("We typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless."). Just so here. Had Congress intended "tangible object" in §1519 to be interpreted so generically as to capture physical objects as dissimilar as documents and fish, Congress would have had no reason to refer specifically to "record" or "document." The Government's unbounded reading of "tangible object" would render those words misleading surplusage.

Having used traditional tools of statutory interpretation to examine markers of congressional intent within the Sarbanes-Oxley Act and §1519 itself, we are persuaded that an aggressive interpretation of "tangible object" must be rejected. It is highly improbable that Congress would have buried a general spoliation statute covering objects of

any and every kind in a provision targeting fraud in financial record-keeping.

The Government argues, however, that our inquiry would be incomplete if we failed to consider the origins of the phrase "record, document, or tangible object." Congress drew that phrase, the Government says, from a 1962 Model Penal Code (MPC) provision, and reform proposals based on that provision. The MPC provision and proposals prompted by it would have imposed liability on anyone who "alters, destroys, mutilates, conceals, or removes a record, document or thing." See ALI, MPC §241.7(1), p. 175 (1962). Those proscriptions were understood to refer to all physical evidence. See MPC §241.7, Comment 3, at 179 (1980) (provision "applies to any physical object"). Accordingly, the Government reasons, and the dissent exuberantly agrees, *post*, at 4–5, Congress must have intended §1519 to apply to the universe of physical evidence.

The inference is unwarranted. True, the 1962 MPC provision prohibited tampering with any kind of physical evidence. But unlike §1519, the MPC provision did not prohibit actions that specifically relate to records, documents, and objects used to record or preserve information. The MPC provision also ranked the offense as a misdemeanor and limited liability to instances in which the actor "believ[es] that an official proceeding or investigation is pending or about to be instituted." MPC §241.7(1), at 175. Yates would have had scant reason to anticipate a felony prosecution, and certainly not one instituted at a time when even the smallest of the fish he caught came within the legal limit. See *supra,* at 4; cf. *Bond* v. *United States*, 572 U. S. ___, ___ (2014), (slip op., at 14) (rejecting "boundless reading" of a statutory term given "deeply serious consequences" that reading would entail). A proposed federal offense in line with the MPC provision, advanced by a federal commission in 1971, was similarly

qualified.  See Final Report of the National Commission on Reform of Federal Criminal Laws §1323, pp. 116–117 (1971).

Section 1519 conspicuously lacks the limits built into the MPC provision and the federal proposal.  It describes not a misdemeanor, but a felony punishable by up to 20 years in prison.  And the section covers conduct intended to impede any federal investigation or proceeding, including one not even on the verge of commencement.  Given these significant differences, the meaning of "record, document, or thing" in the MPC provision and a kindred proposal is not a reliable indicator of the meaning Congress assigned to "record, document, or tangible object" in §1519.  The MPC provision, in short, tells us neither "what Congress wrote [nor] what Congress wanted," cf. *post*, at 15, concerning Yates's small fish as the subject of a federal felony prosecution.

C

Finally, if our recourse to traditional tools of statutory construction leaves any doubt about the meaning of "tangible object," as that term is used in §1519, we would invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland* v. *United States*, 531 U. S. 12, 25 (2000) (quoting *Rewis* v. *United States*, 401 U. S. 808, 812 (1971)).  That interpretative principle is relevant here, where the Government urges a reading of §1519 that exposes individuals to 20-year prison sentences for tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil.  See *Liparota* v. *United States*, 471 U. S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning

conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "tangible object" in §1519, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." See *Cleveland*, 531 U. S., at 25 (quoting *United States* v. *Universal C. I. T. Credit Corp.*, 344 U. S. 218, 222 (1952)). See also *Jones* v. *United States*, 529 U. S. 848, 858–859 (2000) (rule of lenity "reinforces" the conclusion that arson of an owner-occupied residence is not subject to federal prosecution under 18 U. S. C. §844(i) because such a residence does not qualify as property "used in" commerce or commerce-affecting activity).[8]

————————

[8] The dissent cites *United States* v. *McRae*, 702 F. 3d 806, 834–838 (CA5 2012), *United States* v. *Maury*, 695 F. 3d 227, 243–244 (CA3 2012), and *United States* v. *Natal*, 2014 U. S. Dist. LEXIS 108852, *24–*26 (Conn., Aug. 7, 2014), as cases that would not be covered by §1519 as we read it. *Post*, at 18–19. Those cases supply no cause for concern that persons who commit "major" obstructive acts, *id.* at 18, will go unpunished. The defendant in *McRae*, a police officer who seized a car containing a corpse and then set it on fire, was also convicted for that conduct under 18 U. S. C. §844(h) and sentenced to a term of 120 months' imprisonment for that offense. See 702 F. 3d, at 817–818, 839–840. The defendant in *Natal*, who repainted a van to cover up evidence of a fatal arson, was also convicted of three counts of violating 18 U. S. C. §3 and sentenced to concurrent terms of 174 months' imprisonment. See Judgment in *United States* v. *Morales*, No. 3:12–cr–164 (Conn., Jan. 12, 2015). And the defendant in *Maury*, a company convicted under §1519 of concealing evidence that a cement mixer's safety lock was disabled when a worker's fingers were amputated, was also convicted of numerous other violations, including three counts of violating 18 U. S. C. §1505 for concealing evidence of other worker safety violations. See 695 F. 3d, at 244–245. See also *United States* v. *Atlantic States Cast Iron Pipe Co.*, 2007 WL 2282514, *70 (NJ, Aug. 2, 2007) (setting forth charges against the company). For those violations, the company was fined millions of dollars and ordered to operate under the supervision of a court-appointed monitor. See 695 F. 3d, at 246.

\*    \*    \*

For the reasons stated, we resist reading §1519 expansively to create a coverall spoliation of evidence statute, advisable as such a measure might be.  Leaving that important decision to Congress, we hold that a "tangible object" within §1519's compass is one used to record or preserve information.  The judgment of the U. S. Court of Appeals for the Eleventh Circuit is therefore reversed, and the case is remanded for further proceedings.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–7451

_____

## JOHN L. YATES, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[February 25, 2015]

JUSTICE ALITO, concurring in the judgment.

This case can and should be resolved on narrow grounds. And though the question is close, traditional tools of statutory construction confirm that John Yates has the better of the argument. Three features of 18 U. S. C. §1519 stand out to me: the statute's list of nouns, its list of verbs, and its title. Although perhaps none of these features by itself would tip the case in favor of Yates, the three combined do so.

Start with the nouns. Section 1519 refers to "any record, document, or tangible object." The *noscitur a sociis* canon instructs that when a statute contains a list, each word in that list presumptively has a "similar" meaning. See, *e.g., Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 576 (1995). A related canon, *ejusdem generis* teaches that general words following a list of specific words should usually be read in light of those specific words to mean something "similar." See, *e.g., Christopher* v. *SmithKline Beecham Corp.*, 567 U. S. ___, ___ (2012) (slip op., at 18). Applying these canons to §1519's list of nouns, the term "tangible object" should refer to something similar to records or documents. A fish does not spring to mind—nor does an antelope, a colonial farmhouse, a hydrofoil, or an oil derrick. All are "objects" that are "tangible." But who wouldn't raise an eyebrow if a neighbor, when asked to identify something similar to a "record" or "document,"

said "crocodile"?

This reading, of course, has its shortcomings. For instance, this is an imperfect *ejusdem generis* case because "record" and "document" are themselves quite general. And there is a risk that "tangible object" may be made superfluous—what is similar to a "record" or "document" but yet is not one? An e-mail, however, could be such a thing. See United States Sentencing Commission, Guidelines Manual §2J1.2 and comment. (Nov. 2003) (reading "records, documents, or tangible objects" to "includ[e]" what is found on "magnetic, optical, digital, other electronic, or other storage mediums or devices"). An e-mail, after all, might not be a "document" if, as was "traditionally" so, a document was a "piece of paper with information on it," not "information stored on a computer, electronic storage device, or any other medium." Black's Law Dictionary 587–588 (10th ed. 2014). E-mails might also not be "records" if records are limited to "minutes" or other formal writings "designed to memorialize [past] events." *Id.,* at 1465. A hard drive, however, is tangible and can contain files that are precisely akin to even these narrow definitions. Both "record" and "document" can be read more expansively, but adding "tangible object" to §1519 would ensure beyond question that electronic files are included. To be sure, "tangible object" presumably can capture more than just e-mails; Congress enacts "catchall[s]" for "known unknowns." *Republic of Iraq* v. *Beaty*, 556 U. S. 848, 860 (2009). But where *noscitur a sociis* and *ejusdem generis* apply, "known unknowns" should be similar to known knowns, *i.e.,* here, records and documents. This is especially true because reading "tangible object" too broadly could render "record" and "document" superfluous.

Next, consider §1519's list of verbs: "alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in." Although many of those verbs could apply to nouns as far-flung as salamanders, satellites, or sand

dunes, the last phrase in the list—"makes a false entry in"—makes no sense outside of filekeeping. How does one make a false entry in a fish? "Alters" and especially "falsifies" are also closely associated with filekeeping. Not one of the verbs, moreover, *cannot* be applied to filekeeping—certainly not in the way that "makes a false entry in" is always inconsistent with the aquatic.

Again, the Government is not without a response. One can imagine Congress trying to write a law so broadly that not every verb lines up with every noun. But failure to "line up" may suggest that something has gone awry in one's interpretation of a text. Where, as here, each of a statute's verbs applies to a certain category of nouns, there is some reason to think that Congress had that category in mind. Categories, of course, are often underinclusive or overinclusive—§1519, for instance, applies to a bomb-threatening letter but not a bomb. But this does not mean that categories are not useful or that Congress does not enact them. See, *e.g., Vance* v. *Bradley*, 440 U. S. 93, 108–109 (1979). Here, focusing on the verbs, the category of nouns appears to be filekeeping. This observation is not dispositive, but neither is it nothing. The Government also contends that §1519's verbs cut both ways because it is unnatural to apply "falsifies" to tangible objects, and that is certainly true. One does not falsify the outside casing of a hard drive, but one could falsify or alter data physically recorded on that hard drive.

Finally, my analysis is influenced by §1519's title: "Destruction, alteration, or falsification of *records* in Federal investigations and bankruptcy." (Emphasis added.) This too points toward filekeeping, not fish. Titles can be useful devices to resolve "'doubt about the meaning of a statute.'" *Porter* v. *Nussle*, 534 U. S. 516, 527–528 (2002) (quoting *Almendarez-Torres* v. *United States*, 523 U. S. 224, 234 (1998)); see also *Lawson* v. *FMR LLC*, 571 U. S. ___, ___–___ (2014) (SOTOMAYOR, J., dissenting) (slip op.,

at 4–6). The title is especially valuable here because it reinforces what the text's nouns and verbs independently suggest—that no matter how other statutes might be read, this particular one does not cover every noun in the universe with tangible form.

Titles, of course, are also not dispositive. Here, if the list of nouns did not already suggest that "tangible object" should mean something similar to records or documents, especially when read in conjunction with §1519's peculiar list of verbs with their focus on filekeeping, then the title would not be enough on its own. In conjunction with those other two textual features, however, the Government's argument, though colorable, becomes too implausible to accept. See, *e.g., Washington State Dept. of Social and Health Servs.* v. *Guardianship Estate of Keffeler*, 537 U. S. 371, 384–385 (2003) (focusing on the "product of [two] canons of construction" which was "confirmed" by other interpretative evidence); cf. *Al-Adahi* v. *Obama*, 613 F. 3d 1102, 1105–1106 (CADC 2010) (aggregating evidence).

# SUPREME COURT OF THE UNITED STATES

No. 13–7451

## JOHN L. YATES, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[February 25, 2015]

JUSTICE KAGAN, with whom JUSTICE SCALIA, JUSTICE KENNEDY, and JUSTICE THOMAS join, dissenting.

A criminal law, 18 U. S. C. §1519, prohibits tampering with "any record, document, or tangible object" in an attempt to obstruct a federal investigation. This case raises the question whether the term "tangible object" means the same thing in §1519 as it means in everyday language—any object capable of being touched. The answer should be easy: Yes. The term "tangible object" is broad, but clear. Throughout the U. S. Code and many States' laws, it invariably covers physical objects of all kinds. And in §1519, context confirms what bare text says: All the words surrounding "tangible object" show that Congress meant the term to have a wide range. That fits with Congress's evident purpose in enacting §1519: to punish those who alter or destroy physical evidence—*any* physical evidence—with the intent of thwarting federal law enforcement.

The plurality instead interprets "tangible object" to cover "only objects one can use to record or preserve information." *Ante*, at 7. The concurring opinion similarly, if more vaguely, contends that "tangible object" should refer to "something similar to records or documents"—and shouldn't include colonial farmhouses, crocodiles, or fish. *Ante*, at 1 (ALITO, J., concurring in judgment). In my view, conventional tools of statutory construction all lead to a

more conventional result: A "tangible object" is an object that's tangible. I would apply the statute that Congress enacted and affirm the judgment below.

I

While the plurality starts its analysis with §1519's heading, see *ante*, at 10 ("We note first §1519's caption"), I would begin with §1519's text. When Congress has not supplied a definition, we generally give a statutory term its ordinary meaning. See, *e.g.*, *Schindler Elevator Corp.* v. *United States ex rel. Kirk*, 563 U. S. ___, ___ (2011) (slip op., at 5). As the plurality must acknowledge, the ordinary meaning of "tangible object" is "a discrete thing that possesses physical form." *Ante*, at 7 (punctuation and citation omitted). A fish is, of course, a discrete thing that possesses physical form. See generally Dr. Seuss, One Fish Two Fish Red Fish Blue Fish (1960). So the ordinary meaning of the term "tangible object" in §1519, as no one here disputes, covers fish (including too-small red grouper).

That interpretation accords with endless uses of the term in statute and rule books as construed by courts. Dozens of federal laws and rules of procedure (and hundreds of state enactments) include the term "tangible object" or its first cousin "tangible thing"—some in association with documents, others not. See, *e.g.*, 7 U. S. C. §8302(2) (referring to "any material or tangible object that could harbor a pest or disease"); 15 U. S. C. §57b–1(c) (authorizing investigative demands for "documentary material or tangible things"); 18 U. S. C. §668(a)(1)(D) (defining "museum" as entity that owns "tangible objects that are exhibited to the public"); 28 U. S. C. §2507(b) (allowing discovery of "relevant facts, books, papers, documents or tangible things").[1] To my knowledge, no court

—————

[1] From Alabama and Alaska through Wisconsin and Wyoming (and

has ever read any such provision to exclude things that
don't record or preserve data; rather, all courts have ad-
hered to the statutory language's ordinary (*i.e.*, expansive)
meaning. For example, courts have understood the
phrases "tangible objects" and "tangible things" in the
Federal Rules of Criminal and Civil Procedure to cover
everything from guns to drugs to machinery to . . . ani-
mals. See, *e.g.*, *United States* v. *Obiukwu*, 17 F. 3d 816,
819 (CA6 1994) (*per curiam*) (handgun); *United States* v.
*Acarino*, 270 F. Supp. 526, 527–528 (EDNY 1967) (heroin);
*In re Newman*, 782 F. 2d 971, 972–975 (CA Fed. 1986)
(energy generation system); *Martin* v. *Reynolds Metals
Corp.*, 297 F. 2d 49, 56–57 (CA9 1961) (cattle). No sur-
prise, then, that—until today—courts have uniformly
applied the term "tangible object" in §1519 in the same
way. See, *e.g.*, *United States* v. *McRae*, 702 F. 3d 806,
834–838 (CA5 2012) (corpse); *United States* v. *Maury*, 695
F. 3d 227, 243–244 (CA3 2012) (cement mixer).

That is not necessarily the end of the matter; I agree
with the plurality (really, who does not?) that context
matters in interpreting statutes. We do not "construe the
meaning of statutory terms in a vacuum." *Tyler* v. *Cain*,
533 U. S. 656, 662 (2001). Rather, we interpret particular
words "in their context and with a view to their place in
the overall statutory scheme." *Davis* v. *Michigan Dept. of
Treasury*, 489 U. S. 803, 809 (1989). And sometimes that

---

trust me—in all that come between), States similarly use the terms
"tangible objects" and "tangible things" in statutes and rules of all
sorts. See, *e.g.*, Ala. Code §34–17–1(3) (2010) (defining "landscape
architecture" to include the design of certain "tangible objects and
features"); Alaska Rule Civ. Proc. 34(a)(1) (2014) (allowing litigants to
"inspect, copy, test, or sample any tangible things" that constitute or
contain discoverable material); Wis. Stat. §804.09(1) (2014) (requiring
the production of "designated tangible things" in civil proceedings);
Wyo. Rule Crim. Proc. 41(h) (2014) (defining "property" for purposes of
a search-and-seizure statute to include "documents, books, papers and
any other tangible objects").

means, as the plurality says, that the dictionary definition of a disputed term cannot control. See, *e.g.*, *Bloate* v. *United States*, 559 U. S. 196, 205, n. 9 (2010). But this is not such an occasion, for here the text and its context point the same way. Stepping back from the words "tangible object" provides only further evidence that Congress said what it meant and meant what it said.

Begin with the way the surrounding words in §1519 reinforce the breadth of the term at issue. Section 1519 refers to "any" tangible object, thus indicating (in line with *that* word's plain meaning) a tangible object "of whatever kind." Webster's Third New International Dictionary 97 (2002). This Court has time and again recognized that "any" has "an expansive meaning," bringing within a statute's reach *all* types of the item (here, "tangible object") to which the law refers. *Department of Housing and Urban Development* v. *Rucker*, 535 U. S. 125, 131 (2002); see, *e.g.*, *Republic of Iraq* v. *Beaty*, 556 U. S. 848, 856 (2009); *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 219–220 (2008). And the adjacent laundry list of verbs in §1519 ("alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry") further shows that Congress wrote a statute with a wide scope. Those words are supposed to ensure—just as "tangible object" is meant to— that §1519 covers the whole world of evidence-tampering, in all its prodigious variety. See *United States* v. *Rodgers*, 466 U. S. 475, 480 (1984) (rejecting a "narrow, technical definition" of a statutory term when it "clashes strongly" with "sweeping" language in the same sentence).

Still more, "tangible object" appears as part of a three-noun phrase (including also "records" and "documents") common to evidence-tampering laws and always understood to embrace things of all kinds. The Model Penal Code's evidence-tampering section, drafted more than 50 years ago, similarly prohibits a person from "alter[ing], destroy[ing], conceal[ing] or remov[ing] any *record, docu-*

*ment or thing*" in an effort to thwart an official investigation or proceeding. ALI, Model Penal Code §241.7(1), p. 175 (1962) (emphasis added). The Code's commentary emphasizes that the offense described in that provision is "not limited to conduct that [alters] a written instrument." *Id.*, §241.7, Comment 3, at 179. Rather, the language extends to "any physical object." *Ibid.* Consistent with that statement—and, of course, with ordinary meaning— courts in the more than 15 States that have laws based on the Model Code's tampering provision apply them to all tangible objects, including drugs, guns, vehicles and . . . yes, animals. See, *e.g.*, *State* v. *Majors*, 318 S. W. 3d 850, 859–861 (Tenn. 2010) (cocaine); *Puckett* v. *State*, 328 Ark. 355, 357–360, 944 S. W. 2d 111, 113–114 (1997) (gun); *State* v. *Bruno*, 236 Conn. 514, 519–520, 673 A. 2d 1117, 1122–1123 (1996) (bicycle, skeleton, blood stains); *State* v. *Crites*, 2007 Mont. Dist. LEXIS 615, *5–*7 (Dec. 21, 2007) (deer antlers). Not a one has limited the phrase's scope to objects that record or preserve information.

The words "record, document, or tangible object" in §1519 also track language in 18 U. S. C. §1512, the federal witness-tampering law covering (as even the plurality accepts, see *ante*, at 12) physical evidence in all its forms. Section 1512, both in its original version (preceding §1519) and today, repeatedly uses the phrase "record, document, or other object"—most notably, in a provision prohibiting the use of force or threat to induce another person to withhold any of those materials from an official proceeding. §4(a) of the Victim and Witness Protection Act of 1982, 96 Stat. 1249, as amended, 18 U. S. C. §1512(b)(2). That language, which itself likely derived from the Model Penal Code, encompasses no less the bloody knife than the incriminating letter, as all courts have for decades agreed. See, *e.g.*, *United States* v. *Kellington*, 217 F. 3d 1084, 1088 (CA9 2000) (boat); *United States* v. *Applewhaite*, 195 F. 3d 679, 688 (CA3 1999) (stone wall). And typically "only the

most compelling evidence" will persuade this Court that Congress intended "nearly identical language" in provisions dealing with related subjects to bear different meanings. *Communication Workers* v. *Beck*, 487 U. S. 735, 754 (1988); see A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012). Context thus again confirms what text indicates.

And legislative history, for those who care about it, puts extra icing on a cake already frosted. Section 1519, as the plurality notes, see *ante*, at 2, 6, was enacted after the Enron Corporation's collapse, as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745. But the provision began its life in a separate bill, and the drafters emphasized that Enron was "only a case study exposing the shortcomings in our current laws" relating to both "corporate and criminal" fraud. S. Rep. No. 107–146, pp. 2, 11 (2002). The primary "loophole[]" Congress identified, see *id.*, at 14, arose from limits in the part of §1512 just described: That provision, as uniformly construed, prohibited a person from inducing another to destroy "record[s], document[s], or other object[s]"—of every type—but not from doing so himself. §1512(b)(2); see *supra*, at 5. Congress (as even the plurality agrees, see *ante*, at 6) enacted §1519 to close that yawning gap. But §1519 could fully achieve that goal only if it covered all the records, documents, and objects §1512 did, as well as all the means of tampering with them. And so §1519 was written to do exactly that—"to apply broadly to any acts to destroy or fabricate physical evidence," as long as performed with the requisite intent. S. Rep. No. 107–146, at 14. "When a person destroys evidence," the drafters explained, "overly technical legal distinctions should neither hinder nor prevent prosecution." *Id.*, at 7. Ah well: Congress, meet today's Court, which here invents just such a distinction with just such an effect. See *United States* v. *Philadelphia Nat. Bank*, 374 U. S. 321, 343 (1963) ("[C]reat[ing] a large loophole in

a statute designed to close a loophole" is "illogical and disrespectful of . . . congressional purpose").

As Congress recognized in using a broad term, giving immunity to those who destroy non-documentary evidence has no sensible basis in penal policy. A person who hides a murder victim's body is no less culpable than one who burns the victim's diary. A fisherman, like John Yates, who dumps undersized fish to avoid a fine is no less blameworthy than one who shreds his vessel's catch log for the same reason. Congress thus treated both offenders in the same way. It understood, in enacting §1519, that destroying evidence is destroying evidence, whether or not that evidence takes documentary form.

## II
### A

The plurality searches far and wide for anything—*anything*—to support its interpretation of §1519. But its fishing expedition comes up empty.

The plurality's analysis starts with §1519's title: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy." See *ante*, at 10; see also *ante*, at 3–4 (opinion of ALITO, J.). That's already a sign something is amiss. I know of no other case in which we have *begun* our interpretation of a statute with the title, or relied on a title to override the law's clear terms. Instead, we have followed "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Trainmen* v. *Baltimore & Ohio R. Co.*, 331 U. S. 519, 528–529 (1947).

The reason for that "wise rule" is easy to see: A title is, almost necessarily, an abridgment. Attempting to mention every term in a statute "would often be ungainly as well as useless"; accordingly, "matters in the text . . . are frequently unreflected in the headings." *Id.*, at 528. Just last year, this Court observed that two titles in a nearby

section of Sarbanes-Oxley serve as "but a short-hand reference to the general subject matter" of the provision at issue, "not meant to take the place of the detailed provisions of the text." *Lawson* v. *FMR LLC*, 571 U. S. ___, ___ (2014) (slip op., at 16) (quoting *Trainmen*, 331 U. S., at 528). The "under-inclusiveness" of the headings, we stated, was "apparent." *Lawson*, 571 U. S., at ___ (slip op., at 16). So too for §1519's title, which refers to "destruction, alteration, or falsification" but *not* to mutilation, concealment, or covering up, and likewise mentions "records" but *not* other documents or objects. Presumably, the plurality would not refuse to apply §1519 when a person only conceals evidence rather than destroying, altering, or falsifying it; instead, the plurality would say that a title is just a title, which cannot "undo or limit" more specific statutory text. *Ibid.* (quoting *Trainmen*, 331 U. S., at 529). The same holds true when the evidence in question is not a "record" but something else whose destruction, alteration, etc., is intended to obstruct justice.

The plurality next tries to divine meaning from §1519's "position within Chapter 73 of Title 18." *Ante*, at 10. But that move is yet odder than the last. As far as I can tell, this Court has never once suggested that the section number assigned to a law bears upon its meaning. Cf. Scalia, *supra*, at xi–xvi (listing more than 50 interpretive principles and canons without mentioning the plurality's new number-in-the-Code theory). And even on its own terms, the plurality's argument is hard to fathom. The plurality claims that if §1519 applied to objects generally, Congress would not have placed it "after the pre-existing §1516, §1517, and §1518" because those are "specialized provisions." *Ante*, at 11. But search me if I can find a better place for a broad ban on evidence-tampering. The plurality seems to agree that the law properly goes in Chapter 73—the criminal code's chapter on "obstruction of justice." But the provision does not logically fit into any of that

chapter's pre-existing sections. And with the first 18 numbers of the chapter already taken (starting with §1501 and continuing through §1518), the law naturally took the 19th place. That is standard operating procedure. Prior to the Sarbanes-Oxley Act of 2002, all of Chapter 73 was ordered chronologically: Section 1518 was later enacted than §1517, which was later enacted than §1516, which was . . . well, you get the idea. And after Sarbanes-Oxley, Congress has continued in the same vein. Section 1519 is thus right where you would expect it (as is the contemporaneously passed §1520)—between §1518 (added in 1996) and §1521 (added in 2008).[2]

The plurality's third argument, relying on the surplusage canon, at least invokes a known tool of statutory construction—but it too comes to nothing. Says the plurality: If read naturally, §1519 "would render superfluous" §1512(c)(1), which Congress passed "as part of the same act." *Ante*, at 13. But that is not so: Although the two provisions significantly overlap, each applies to conduct the other does not. The key difference between the two is that §1519 protects the integrity of "matter[s] within the jurisdiction of any [federal] department or agency" whereas §1512(c)(1) safeguards "official proceeding[s]" as defined in §1515(a)(1)(A). Section 1519's language often applies more broadly than §1512(c)(1)'s, as the plurality notes.

––––––––––

[2] The lonesome exception to Chapter 73's chronological order is §1514A, added in Sarbanes-Oxley to create a civil action to protect whistleblowers. Congress decided to place that provision right after the only other section in Chapter 73 to authorize a civil action (that one to protect victims and witnesses). The plurality, seizing on the §1514 example, says it likewise "would have made more sense for Congress to codify the substance of §1519 within §1512 or in a new §1512A." *Ante*, at 12, n. 4. But §1512 is titled "Tampering with a witness, victim, or an informant," and its provisions almost all protect witnesses from intimidation and harassment. It makes perfect sense that Congress wanted a broad ban on evidence-spoliation to stand on its own rather than as part of—or an appendage to—a witness-tampering provision.

For example, an FBI investigation counts as a matter within a federal department's jurisdiction, but falls outside the statutory definition of "official proceeding" as construed by courts. See, *e.g.*, *United States* v. *Gabriel*, 125 F. 3d 89, 105, n. 13 (CA2 1997). But conversely, §1512(c)(1) sometimes reaches more widely than §1519. For example, because an "official proceeding" includes any "proceeding before a judge or court of the United States," §1512(c)(1) prohibits tampering with evidence in federal litigation between private parties. See §1515(a)(1)(A); *United States* v. *Burge*, 711 F. 3d 803, 808–810 (CA7 2013); *United States* v. *Reich*, 479 F. 3d 179, 185–187 (CA2 2007) (Sotomayor, J.). By contrast, §1519 wouldn't ordinarily operate in that context because a federal court isn't a "department or agency." See *Hubbard* v. *United States*, 514 U. S. 695, 715 (1995).[3] So the surplusage canon doesn't come into play.[4] Overlap—even significant overlap—abounds in the criminal law. See *Loughrin* v. *United*

--------

[3] The plurality's objection to this statement is difficult to understand. It cannot take issue with *Hubbard*'s holding that "a federal court is neither a 'department' nor an 'agency'" in a statute referring, just as §1519 does, to "any matter within the jurisdiction of any department or agency of the United States." 514 U. S., at 698, 715. So the plurality suggests that the phrase "in relation to . . . any such matter" in §1519 somehow changes *Hubbard*'s result. See *ante*, at 12–13, and n. 5. But that phrase still demands that evidence-tampering relate to a "matter within the jurisdiction of any department or agency"—excluding courts, as *Hubbard* commands. That is why the federal government, as far as I can tell, has never once brought a prosecution under §1519 for evidence-tampering in litigation between private parties. It instead uses §1512(c)(1) for that purpose.

[4] Section 1512(c)(1) also applies more broadly than §1519 in proceedings relating to insurance regulation. The term "official proceeding" in §1512(c)(1) is defined to include "proceeding[s] involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency." §1515(a)(1)(D). But §1519 wouldn't usually apply in that context because state, not federal, agencies handle most insurance regulation.

*States*, 573 U. S. ___, ___ – ___, n. 4 (2014) (slip op., at 6–7, n. 4). This Court has never thought that of such ordinary stuff surplusage is made. See *ibid.*; *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253 (1992).

And the legislative history to which the plurality appeals, see *ante*, at 6, only cuts against it because those materials show that lawmakers knew that §1519 and §1512(c)(1) share much common ground. Minority Leader Lott introduced the amendment that included §1512(c)(1) (along with other criminal and corporate fraud provisions) late in the legislative process, explaining that he did so at the specific request of the President. See 148 Cong. Rec. 12509, 12512 (2002) (remarks of Sen. Lott). Not only Lott but several other Senators noted the overlap between the President's package and provisions already in the bill, most notably §1519. See *id.*, at 12512 (remarks of Sen. Lott); *id.*, at 12513 (remarks of Sen. Biden); *id.*, at 12517 (remarks of Sens. Hatch and Gramm). The presence of both §1519 and §1512(c)(1) in the final Act may have reflected belt-and-suspenders caution: If §1519 contained some flaw, §1512(c)(1) would serve as a backstop. Or the addition of §1512(c)(1) may have derived solely from legislators' wish "to satisfy audiences other than courts"—that is, the President and his Justice Department. Gluck & Bressman, Statutory Interpretation from the Inside, 65 Stan. L. Rev. 901, 935 (2013) (emphasis deleted). Whichever the case, Congress's consciousness of overlap between the two provisions removes any conceivable reason to cast aside §1519's ordinary meaning in service of preventing some statutory repetition.

Indeed, the inclusion of §1512(c)(1) in Sarbanes-Oxley creates a far worse problem for the plurality's construction of §1519 than for mine. Section 1512(c)(1) criminalizes the destruction of any "record, document, or other object"; §1519 of any "record, document, or tangible object." On the plurality's view, one "object" is really an object, where-

as the other is only an object that preserves or stores information. But "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act," passed at the same time, "are intended to have the same meaning." *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986) (internal quotation marks omitted). And that is especially true when the different provisions pertain to the same subject. See *supra*, at 5–6. The plurality doesn't—really, can't—explain why it instead interprets the same words used in two provisions of the same Act addressing the same basic problem to mean fundamentally different things.

Getting nowhere with surplusage, the plurality switches canons, hoping that *noscitur a sociis* and *ejusdem generis* will save it. See *ante*, at 13–16; see also *ante*, at 1–2 (opinion of ALITO, J.). The first of those related canons advises that words grouped in a list be given similar meanings. The second counsels that a general term following specific words embraces only things of a similar kind. According to the plurality, those Latin maxims change the English meaning of "tangible object" to only things, like records and documents, "used to record or preserve information." *Ante*, at 14.[5] But understood as this Court always has, the canons have no such transformative effect on the worka-

––––––––––

[5]The plurality seeks support for this argument in the Sentencing Commission's construction of the phrase "records, documents, or tangible objects," *ante*, at 14, but to no avail. The plurality cites a note in the Commission's Manual clarifying that this phrase, as used in the Sentencing Guidelines, "includes" various electronic information, communications, and storage devices. United States Sentencing Commission, Guidelines Manual §2J1.2, comment., n. 1 (Nov. 2014) (USSG). But "includes" (following its ordinary definition) "is not exhaustive," as the Commission's commentary makes explicit. USSG §1B1.1, comment., n. 2. Otherwise, the Commission's construction wouldn't encompass *paper* documents. All the note does is to make plain that "records, documents, or tangible objects" embraces stuff relating to the digital (as well as the material) world.

day language Congress chose.

As an initial matter, this Court uses *noscitur a sociis* and *ejusdem generis* to resolve ambiguity, not create it. Those principles are "useful rule[s] of construction where words are of obscure or doubtful meaning." *Russell Motor Car Co.* v. *United States*, 261 U. S. 514, 520 (1923). But when words have a clear definition, and all other contextual clues support that meaning, the canons cannot properly defeat Congress's decision to draft broad legislation. See, *e.g.*, *Ali*, 552 U. S., at 227 (rejecting the invocation of these canons as an "attempt to create ambiguity where the statute's text and structure suggest none").

Anyway, assigning "tangible object" its ordinary meaning comports with *noscitur a sociis* and *ejusdem generis* when applied, as they should be, with attention to §1519's subject and purpose. Those canons require identifying a common trait that links all the words in a statutory phrase. See, *e.g.*, *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. 280, 289, n. 7 (2010); *Ali*, 552 U. S., at 224–226. In responding to that demand, the plurality characterizes records and documents as things that preserve information—and so they are. But just as much, they are things that provide information, and thus potentially serve as evidence relevant to matters under review. And in a statute pertaining to obstruction of federal investigations, that evidentiary function comes to the fore. The destruction of records and documents prevents law enforcement agents from gathering facts relevant to official inquiries. And so too does the destruction of tangible objects—of whatever kind. Whether the item is a fisherman's ledger or an undersized fish, throwing it overboard has the identical effect on the administration of justice. See *supra*, at 7. For purposes of §1519, records, documents, and (all) tangible objects are therefore alike.

Indeed, even the plurality can't fully credit its *nosci-*

*tur*/*ejusdem* argument. The same reasoning would apply to *every* law placing the word "object" (or "thing") after "record" and "document." But as noted earlier, such statutes are common: The phrase appears (among other places) in many state laws based on the Model Penal Code, as well as in multiple provisions of §1512. See *supra*, at 4–5. The plurality accepts that in those laws "object" means object; its argument about superfluity positively *depends* on giving §1512(c)(1) that broader reading. See *ante*, at 13, 16. What, then, is the difference here? The plurality proposes that some of those statutes describe less serious offenses than §1519. See *ante*, at 17. How and why that distinction affects application of the *noscitur a sociis* and *ejusdem generis* canons is left obscure: Count it as one more of the plurality's never-before-propounded, not-readily-explained interpretive theories. See *supra*, at 7, 8–9, 11–12. But in any event, that rationale cannot support the plurality's willingness to give "object" its natural meaning in §1512, which (like §1519) sets out felonies with penalties of up to 20 years. See §§1512(a)(3)(C), (b), (c). The canons, in the plurality's interpretive world, apparently switch on and off whenever convenient.

And the plurality's invocation of §1519's verbs does nothing to buttress its canon-based argument. See *ante*, at 14–15; *ante*, at 2–3 (opinion of ALITO, J.). The plurality observes that §1519 prohibits "falsif[ying]" or "mak[ing] a false entry in" a tangible object, and no one can do those things to, say, a murder weapon (or a fish). *Ante*, at 14. But of course someone can alter, destroy, mutilate, conceal, or cover up such a tangible object, and §1519 prohibits those actions too. The Court has never before suggested that all the verbs in a statute need to match up with all the nouns. See *Robers* v. *United States*, 572 U. S. ___, ___ (2014) (slip op., at 4) ("[T]he law does not require legislators to write extra language specifically exempting, phrase by phrase, applications in respect to which a portion of a

phrase is not needed"). And for good reason. It is exactly when Congress sets out to draft a statute broadly—to include every imaginable variation on a theme—that such mismatches will arise. To respond by narrowing the law, as the plurality does, is thus to flout both what Congress wrote and what Congress wanted.

Finally, when all else fails, the plurality invokes the rule of lenity. See *ante*, at 18. But even in its most robust form, that rule only kicks in when, "after all legitimate tools of interpretation have been exhausted, 'a reasonable doubt persists' regarding whether Congress has made the defendant's conduct a federal crime." *Abramski* v. *United States*, 573 U. S. ___, ___ (2014) (SCALIA, J., dissenting) (slip op., at 12) (quoting *Moskal* v. *United States*, 498 U. S. 103, 108 (1990)). No such doubt lingers here. The plurality points to the breadth of §1519, see *ante*, at 18, as though breadth were equivalent to ambiguity. It is not. Section 1519 *is* very broad. It is also very clear. Every traditional tool of statutory interpretation points in the same direction, toward "object" meaning object. Lenity offers no proper refuge from that straightforward (even though capacious) construction.[6]

—————

[6] As part of its lenity argument, the plurality asserts that Yates did not have "fair warning" that his conduct amounted to a felony. *Ante*, at 18; see *ante*, at 17 (stating that "Yates would have had scant reason to anticipate a felony prosecution" when throwing fish overboard). But even under the plurality's view, the dumping of fish is potentially a federal felony—just under §1512(c)(1), rather than §1519. See *ante*, at 12–13. In any event, the plurality itself acknowledges that the ordinary meaning of §1519 covers Yates's conduct, see *ante*, at 7: That provision, no less than §1512(c)(1), announces its broad scope in the clearest possible terms. And when an ordinary citizen seeks notice of a statute's scope, he is more likely to focus on the plain text than (as the plurality would have it) on the section number, the superfluity principle, and the *noscitur* and *ejusdem* canons.

## B

The concurring opinion is a shorter, vaguer version of the plurality's.  It relies primarily on the *noscitur a sociis* and *ejusdem generis* canons, tries to bolster them with §1519's "list of verbs," and concludes with the section's title.  See *supra*, at 7–8, 12–13, 14–15 (addressing each of those arguments).  (Notably, even the concurrence puts no stock in the plurality's section-number and superfluity claims.)  From those familiar materials, the concurrence arrives at the following definition: "'tangible object' should mean something similar to records or documents."  *Ante*, at 4 (opinion of ALITO, J.).  In amplifying that purported guidance, the concurrence suggests applying the term "tangible object" in keeping with what "a neighbor, when asked to identify something similar to record or document," might answer.  *Ante*, at 1.  "[W]ho wouldn't raise an eyebrow," the concurrence wonders, if the neighbor said "crocodile"?  *Ante*, at 1–2.  Courts sometimes say, when explaining the Latin maxims, that the "words of a statute should be interpreted consistent with their neighbors."  See, *e.g.*, *United States* v. *Locke*, 529 U. S. 89, 105 (2000).  The concurrence takes that expression literally.

But §1519's meaning should not hinge on the odd game of Mad Libs the concurrence proposes.  No one reading §1519 needs to fill in a blank after the words "records" and "documents."  That is because Congress, quite helpfully, already did so—adding the term "tangible object."  The issue in this case is what that term means.  So if the concurrence wishes to ask its neighbor a question, I'd recommend a more pertinent one: Do you think a fish (or, if the concurrence prefers, a crocodile) is a "tangible object"?  As to that query, "who wouldn't raise an eyebrow" if the neighbor said "no"?

In insisting on its different question, the concurrence neglects the proper function of catchall phrases like "or tangible object."  The reason Congress uses such terms is

precisely to reach things that, in the concurrence's words, "do[] not spring to mind"—to my mind, to my neighbor's, or (most important) to Congress's. *Ante*, at 1 (opinion of ALITO, J.). As this Court recently explained: "[T]he whole value of a generally phrased residual [term] is that it serves as a catchall for matters not specifically contemplated—known unknowns." *Beaty*, 556 U. S., at 860. Congress realizes that in a game of free association with "record" and "document," it will never think of all the other things—including crocodiles and fish—whose destruction or alteration can (less frequently but just as effectively) thwart law enforcement. Cf. *United States* v. *Stubbs*, 11 F. 3d 632, 637–638 (CA6 1993) (dead crocodiles used as evidence to support smuggling conviction). And so Congress adds the general term "or tangible object"— again, exactly because such things "do[] not spring to mind."[7]

The concurrence suggests that the term "tangible object" serves not as a catchall for physical evidence but to "ensure beyond question" that e-mails and other electronic files fall within §1519's compass. *Ante*, at 2. But that claim is eyebrow-raising in its own right. Would a Congress wishing to make certain that §1519 applies to e-mails add the phrase "tangible object" (as opposed, say, to "electronic communications")? Would a judge or jury member predictably find that "tangible object" encompasses something as virtual as e-mail (as compared, say,

———————————

[7] The concurrence contends that when the *noscitur* and *ejusdem* canons are in play, "'known unknowns' should be similar to known knowns, *i.e.*, here, records and documents." *Ante*, at 2. But as noted above, records and documents *are* similar to crocodiles and fish as far as §1519 is concerned: All are potentially useful as evidence in an investigation. See *supra,* at 13. The concurrence never explains why *that* similarity isn't the relevant one in a statute aimed at evidence-tampering.

with something as real as a fish)?  If not (and the answer is not), then that term cannot function as a failsafe for e-mails.

The concurrence acknowledges that no one of its arguments can carry the day; rather, it takes the Latin canons plus §1519's verbs plus §1519's title to "tip the case" for Yates.  *Ante*, at 1.  But the sum total of three mistaken arguments is . . . three mistaken arguments.  They do not get better in the combining.  And so the concurrence ends up right where the plurality does, except that the concurrence, eschewing the rule of lenity, has nothing to fall back on.

## III

If none of the traditional tools of statutory interpretation can produce today's result, then what accounts for it?  The plurality offers a clue when it emphasizes the disproportionate penalties §1519 imposes if the law is read broadly.  See *ante*, at 17–18.  Section 1519, the plurality objects, would then "expose[] individuals to 20-year prison sentences for tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense."  *Ante*, at 18.  That brings to the surface the real issue: overcriminalization and excessive punishment in the U. S. Code.

Now as to this statute, I think the plurality somewhat—though only somewhat—exaggerates the matter.  The plurality omits from its description of §1519 the requirement that a person act "knowingly" and with "the intent to impede, obstruct, or influence" federal law enforcement.  And in highlighting §1519's maximum penalty, the plurality glosses over the absence of any prescribed minimum.  (Let's not forget that Yates's sentence was not 20 years, but 30 days.)  Congress presumably enacts laws with high maximums and no minimums when it thinks the prohibited conduct may run the gamut from major to minor.  That

KAGAN, J., dissenting

is assuredly true of acts obstructing justice. Compare this case with the following, all of which properly come within, but now fall outside, §1519: *McRae*, 702 F. 3d, at 834–838 (burning human body to thwart murder investigation); *Maury*, 695 F. 3d, at 243–244 (altering cement mixer to impede inquiry into amputation of employee's fingers); *United States* v. *Natal*, 2014 U. S. Dist. LEXIS 108852, *24–*26 (D Conn., Aug. 7, 2014) (repainting van to cover up evidence of fatal arson). Most district judges, as Congress knows, will recognize differences between such cases and prosecutions like this one, and will try to make the punishment fit the crime. Still and all, I tend to think, for the reasons the plurality gives, that §1519 is a bad law— too broad and undifferentiated, with too-high maximum penalties, which give prosecutors too much leverage and sentencers too much discretion. And I'd go further: In those ways, §1519 is unfortunately not an outlier, but an emblem of a deeper pathology in the federal criminal code.

But whatever the wisdom or folly of §1519, this Court does not get to rewrite the law. "Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress." *Rodgers*, 466 U. S., at 484. If judges disagree with Congress's choice, we are perfectly entitled to say so—in lectures, in law review articles, and even in dicta. But we are not entitled to replace the statute Congress enacted with an alternative of our own design.

I respectfully dissent.