# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60805

UNITED STATES OF AMERICA,

> Plaintiff – Appellant,

v.

LAUDERDALE COUNTY, MISSISSIPPI; JUDGE VELDORE YOUNG-GRAHAM, In her official capacity; and JUDGE LISA HOWELL, In her official capacity,

> Defendants – Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, ELROD, and HIGGINSON, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case presents a question of statutory interpretation. The question is whether the phrase "officials or employees of any governmental agency with responsibility for the administration of juvenile justice," as it is used in 34 U.S.C. § 12601(a), includes the judges of a county youth court. Holding that it does not, we AFFIRM the judgment of the district court.

## I.

As this is a question of statutory interpretation, we begin with the text of the statute. In 1994, Congress passed the Violent Crime Control and Law

No. 17-60805

Enforcement Act.[1]  Relevant to this case are the provisions found in Title XXI, § 210401, 108 Stat. 2071, now codified at 34 U.S.C. § 12601.  That section, enacted under a title heading of "State and Local Law Enforcement," and a subtitle heading of "Police Pattern or Practice," reads as follows:

> **(a) Unlawful conduct**
> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
>
> **(b) Civil action by Attorney General**
> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[2] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

34 U.S.C. § 12601.

---

[1] Pub. L. No. 103-322, 108 Stat. 1796 (1994).

[2] The reference to "paragraph (1)" is presumably a scrivener's error that should read "paragraph (a)"—as there does not appear to be a paragraph (1) in the associated statutory scheme to which it could plausibly be referring, and it appears quite clear that the intended reference was to paragraph (a).  *See also Holloway v. United States*, 526 U.S. 1, 19 n.2 (1999) (Scalia, J., dissenting) (noting that a scrivener's error in a statute may only properly be corrected by a court when the text is devoid of any plausible purpose for being written in that manner); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 82 (1994) (Scalia, J., dissenting) ("[T]he *sine qua non* of any 'scrivener's error' doctrine . . . is that the meaning genuinely intended but inadequately expressed must be absolutely clear; otherwise we might be rewriting the statute rather than correcting a technical mistake.").

No. 17-60805

II.

The United States Department of Justice initiated this litigation in October 2012. In its complaint, the United States alleged, *inter alia*,[3] that Lauderdale County and its two Youth Court judges[4] operated a "school-to-prison pipeline" and, through their administration of the juvenile justice process, were engaged in patterns or practices that denied juveniles their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.

Before we further address the litigation underlying this appeal, it will be useful to offer some background on the Lauderdale County Youth Court, its judges, and its procedures. In Mississippi, county youth courts are divisions of the county courts, and the judges of the county courts are also the judges of the youth courts. Miss. Code Ann. § 43-21-107. County judges are elected for terms of four years, and the Governor has authority to fill vacancies by appointment. *Id.* §§ 9-9-5, 9-7-1, 9-1-103. Lauderdale County is authorized two county judges. *Id.* § 9-9-18.3. When a juvenile is charged with offenses under youth court jurisdiction, he or she is brought before an intake officer of the court who establishes jurisdiction and recommends whether informal resolution or custody is warranted. *Id.* § 43-21-357. If the juvenile is placed into custody, he or she must be brought before a youth court judge within 48 hours—excluding weekends and holidays—for a probable cause determination. *Id.* § 43-21-301. If needed, the juvenile is appointed a guardian *ad litem* and/or

---

[3] In the same complaint, the government also made allegations against the City of Meridian, through the Meridian Police Department, and the state of Mississippi, through its Division of Youth Services. However, those allegations are not part of the appeal before us.

[4] The complaint and initial litigation named Judges Frank Coleman and Veldore Young-Graham as defendants in their official capacities. During the course of this litigation, Judge Coleman was replaced by Judge Lisa Howell on the Youth Court, and the parties agree that she should be substituted in as a party to this appeal. We have therefore adjusted the style of the case to replace Judge Coleman with Judge Howell.

defense counsel.  *Id.* §§ 43-21-121, 43-21-201.  If the juvenile is held in custody, an adjudicatory hearing must be held within 21 days, with a few exceptions. *Id.* § 43-21-551.  If the juvenile is adjudicated to be delinquent or in need of supervision, a disposition hearing must then be scheduled within 14 days.  *Id.* § 43-21-601.  If the disposition requires detention, the detention cannot exceed 90 days.  *Id.* § 43-21-605(1)(l).  To perform the work of the youth courts, the youth court judges may appoint intake officers, guardians *ad litem*, defense counsel, and prosecutors.  *Id.* §§ 43-21-119 (intake officers); 43-21-117 (prosecutors); 43-21-121 (guardians *ad litem*); 43-21-201 (defense counsel). The county board of supervisors controls the funding and budget for county youth courts.  *Id.* § 43-21-123.

The government brought this action against Lauderdale County and its Youth Court judges under 34 U.S.C. § 12601 (formerly codified at 42 U.S.C. 14141).  By way of alleged constitutional violations, the government alleges that the Lauderdale County judges: delay detention hearings for longer than 48 hours; do not base their detention determinations on whether probable cause exists; do not consistently provide defense counsel; do not clearly articulate the standards for school suspensions; do not conduct hearings that determine whether violations occurred but instead "exist solely to determine punishment[;]" and do not allow juveniles sufficient access to their attorneys.[5]

By way of relief, the complaint filed by the United States seeks: (1) a declaration that constitutional violations are occurring; (2) an injunction against said unconstitutional practices; (3) an order requiring the defendants "to promulgate and effectuate" policies more protective of constitutional rights;

---

[5] This list is by no means exclusive of all the alleged constitutional violations pleaded by the government in their complaint, but it summarizes the judges' alleged constitutional violations that were briefed by the government on appeal.

No. 17-60805

(4) an order directing the creation of "alternatives to detention and juvenile justice processes for children," as well as the "review and expungement of youth records[;]" (5) for the court to retain jurisdiction until the defendants fully comply; and (6) "any such additional relief as the interests of justice require." Though not the basis of our decision, we share the concerns expressed by the district court that the government appears to be seeking remedies that would not only exceed the authority of the Youth Court judges, but also dictate how the Youth Court judges shall perform their adjudicatory functions when enforcing state law.[6] *Accord ODonnell v. Harris Cty*, 892 F.3d 147, 155 (5th Cir. 2018) (holding that the judge of a county court may be liable under 42 U.S.C. § 1983 when acting as a policymaker for the county, but not when "acting in his or her judicial capacity to enforce state law" (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992))).

The litigation underlying this appeal was tied up in motions, discovery, and settlement discussions for years. The judges first moved to dismiss this litigation on *Younger* abstention grounds, but that argument was rejected by the district court. The judges next moved to dismiss on the grounds of the *Rooker-Feldman* doctrine and judicial immunity. In September 2017, the district court rejected the *Rooker-Feldman* argument, but granted the motion to dismiss on the bases that the plain statutory language of 34 U.S.C. § 12601 did not encompass youth court judges, and also that the judges were entitled to judicial immunity with respect to the claims raised. The government timely

---

[6] At oral argument, the government averred that, at least as applied to the judges, it is only seeking remedies that are "procedural" in nature. Oral Argument at 15:30, 16:10. *United States v. Lauderdale Cty,* (No. 17-60805), http://www.ca5.uscourts.gov/oral-argument-information/oral-argument-recordings. However, the government subsequently declined multiple opportunities to explain, precisely, the nature of the remedies it is seeking against the judges. *See, e.g., id.* at 18:30, 19:55, 21:40.

No. 17-60805

appeals the statutory interpretation and judicial immunity determinations. As far as we are aware, this is the first—and thus far the only—Section 12601 claim brought against the judges of a youth court (or any court) to be resolved in the federal courts through adjudication.

## III.

The government contends that the district court erred in its conclusion that 34 U.S.C. § 12601 does not encompass the Lauderdale County Youth Court judges.[7]  Boiled down to its core, the argument between the parties is whether the phrase "officials or employees of any governmental agency with responsibility for the administration of juvenile justice," when viewed in the context of 34 U.S.C. § 12601, should include the judges of the Youth Court.  To put an even finer point on the argument, the question is whether the Youth Court should be considered an "agency" under the statute.

We review questions of statutory interpretation *de novo*.  *Matter of Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).  "The task of statutory interpretation begins and, if possible, ends with the language of the statute."  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).  "When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.' "  *Id.* (quoting *In re Nowlin*, 576 F.3d 258, 261–62 (5th Cir. 2009)); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [the court] to 'presume that [the]

---

[7] We note that the district court framed its analysis by: first holding that the judges had judicial immunity against the claims made against them in this case; and then holding that that judicial immunity was not overcome by 34 U.S.C. § 12601, as that statute does not apply to the judges.  However, the question of judicial immunity as to specific claims need not be reached if the judges are not proper defendants under the statute to begin with.  Accordingly, on appeal, both the government and the judges in this case correctly present the question as: first, whether the statute applies to judges; and second, if it does, whether the judges have judicial immunity against the specific claims made.

No. 17-60805

legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992))).

Because 34 U.S.C. § 12601 does not define how the term "agency" is used in the statute, we "look first to the word's ordinary meaning." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). The government enters this analysis at a disadvantage. The Supreme Court has observed that "[i]n ordinary parlance, . . . courts are not described as 'departments' or 'agencies' of the Government." *Hubbard v. United States*, 514 U.S. 695, 699 (1995). In fact, the Supreme Court has noted that "it would be strange indeed to refer to a court as an 'agency.'" *Id.* Even setting that precedent aside, a common sense understanding of the word "agency" would seem to require, at least when the word is used in the ordinary sense, that there be a principal on behalf of whom the agent acts. *See Agency*, Black's Law Dictionary (6th ed. 1990). The government does not identify what principal the Youth Court judges would be acting as agents for.

The fact that the word "agency" is not normally understood to include the courts does not mean that Congress could not have enacted a statute that includes them in the definition. Indeed, Congress has enacted several other statutes that do just that. *See, e.g.*, 22 U.S.C. § 6106(1)[8] (defining "agency" for the purposes of the Mansfield Fellowship Program to include "any court of the judicial branch"); 5 U.S.C. § 3371(3)[9] (defining "[f]ederal agency" for the purposes of a statute governing employee assignments between the federal and state governments to include "a court of the United States"). But this fact also cuts against the government here. Given that Congress, when it so chooses,

---

[8] Pub. L. 103-236, § 257, 108 Stat. 432 (1994).

[9] Pub. L. 91-648, § 402(a), 84 Stat. 1920 (1971), *amended by* Pub. L. 95-454, § 603(a), 92 Stat. 1189 (1978).

knows how to deviate from the ordinary usage of "agency" by expressly defining the term to include courts, the fact that Congress did not do so in this statute weighs against deviating from the ordinary usage here.[10] *Accord Whitfield v. United States*, 543 U.S. 209, 216 (2005) (noting, in the context of a different statutory interpretation question, that the inclusion of an overt act requirement in other statutes clearly demonstrated Congress "knows how to impose such a requirement when it wishes to do so"); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476 (2003) (noting that "[w]here Congress intends to refer to ownership in other than the formal sense, it knows how to do so"). *But see* 5 U.S.C. § 551(1)(B)[11] (defining "agency" for the purposes of the Administrative Procedure Act to explicitly exclude the courts).

Recognizing that the ordinary usage of "agency" will not lead to its desired outcome, the government maintains that we must view the word in the context of the rest of the statute. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("[W]e construe language in its context and in light of the terms surrounding it"); *Deal v. United States*, 508 U.S. 129, 132 (1993) (observing the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."). So we now turn to the context.

---

[10] The statute now codified at 22 U.S.C. § 6106(1) (expressly defining "agency" to include "any court" for the purposes of that act) and the statute now codified at 34 U.S.C. § 12601 (not expressly defining "agency" to include courts for the purpose of that act) were both passed in 1994 by the same Congress.

[11] Pub. L. 89–554, 80 Stat. 381 (1966).

No. 17-60805

We will begin our contextual analysis by looking at the title and subtitle of the statutory section enacting this text. While section headings are not controlling, they can be used as evidence when interpreting the operative text of the statute. *See Yates v. United States*, 135 S. Ct. 1074, 1083 (2015) (plurality op.); *id.* at 1089–90 (Alito, J., concurring in the judgment); *Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998) ("the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute" (internal quotation marks omitted)). As already noted, 34 U.S.C. § 12601 was enacted under the title heading of "State and Local Law Enforcement," and the subtitle heading of "Police Pattern or Practice." Pub. L. No. 103-322, § 210401, 108 Stat. 2071. Those headings do not support the government's argument that the statute is intended to include judges.[12]

We next address the question of superfluity. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 553 U.S. 167, 174 (2001)). *See also Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) ("In construing a

---

[12] The government argues that we should disregard those titles based on its assertion that, after the titles were written, the text was modified by an amendment whose sponsor made a single statement purportedly suggesting an intent to include juvenile court systems. We reject this argument. In construing a statute, it is our duty to evaluate the text that was actually enacted into law by both houses of Congress and the President. We will not go down the rabbit hole of attempting to divine the intent of Congress as a whole based on a single statement by a single Senator. *Accord Blanchard v. Bergeron*, 489 U.S. 87, 99 (1989) (Scalia, J., concurring) ("I decline to participate in this process. It is neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes of the United States, nor conducive to a genuine effectuation of congressional intent[.]"); *Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 422 n.27 (5th Cir. 2016) (declining to consider a single comment in a House Report because "[w]e do not consider passing commentary in the legislative history . . . when the statutory text itself yields a single meaning").

statute, a court should give effect, if possible, to every word and every provision Congress used."). 34 U.S.C. § 12601 refers to "pattern[s] or practice[s] of conduct by law enforcement officers **or** by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles[.]" (emphasis added). The government argues in its opening brief on appeal that the second clause would be rendered superfluous if we interpret Section 12601 to encompass only law enforcement personnel. However, that is not the only alternate reading of the statute. As the government rightly concedes in its Reply Brief, the second clause would still encompass more than law enforcement personnel even if not read to include youth court judges. The "incarceration of juveniles" language would clearly still include the personnel of the juvenile detention facilities, and, as the original parties to this litigation demonstrate, the "administration of juvenile justice" language would still include, just to name a few examples, both Lauderdale County and Mississippi's Division of Youth Services. Thus, excluding the judges of the Youth Court from Section 12601 would not render portions of the statute superfluous.

The judges, for their part, raise a *noscitur a sociis* argument. "[W]e rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Yates*, 135 S. Ct. at 1085 (plurality op.) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). *See also* Scalia & Garner, *Reading Law* at 195 ("When several [words] are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."). The judges argue that the principle of *noscitur a sociis* weighs towards interpreting the clause "conduct by law enforcement officers" as limiting the meaning of "any governmental

agency" to entities that are similar to law enforcement agencies. However, on this point the judges' argument holds little water. As the government correctly points out, *noscitur a sociis* "is invoked when a string of statutory terms raises the implication that the 'words grouped in a list should be given related meaning.'" *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 378 (2006) (quoting *Dole v. Steelworkers*, 494 U.S. 26, 36 (1990)). The statutory text "conduct by law enforcement officers or by officials or employees of any governmental agency" does not contain a string of terms; rather, it contains two independent clauses separated by a disjunctive "or." *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (noting that "or" is "almost always disjunctive" (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013))). As such, the *noscitur a sociis* argument does not support the judges' argument that Section 12601 should be interpreted to exclude judges—though its rejection does not necessarily lend weight to the government's counter-contention that Section 12601 must be interpreted to include them. On net, this argument is a wash.

We now turn to the government's argument that "governmental agency" should not be viewed in isolation, but instead should be interpreted as modified by the clause "with responsibility for the administration of juvenile justice." *See, e.g.*, *Leocal*, 543 U.S. at 9 ("we construe language . . . in light of the terms surrounding it"). *See also* Scalia & Garner, *Reading Law* at 167 (noting that "the judicial interpreter [must] consider the entire text, in view of its structure and of the physical and logical relation of its many parts"). The government asserts that the modifying phrase "with responsibility for the administration of juvenile justice" should be interpreted to include juvenile courts within the meaning of "governmental agency." However, this argument is weak for the same reason that the superfluity argument fails. Even though juvenile courts

are indeed entities with responsibility for administering juvenile justice,[13] not all entities are "agencies." There is no shortage of non-adjudicatory entities with responsibility for the administration of juvenile justice—most, if not all, of which are more amenable to the ordinary understanding of the word "agency" than is a court. It seems quite reasonable to infer that Congress was referring to those non-adjudicatory entities when enacting the phrase "governmental agency with responsibility for the administration of juvenile justice[,]" and we see little support for the government's argument that by adding such language Congress deviated from the ordinary usage of the term "agency." As such, the government's invocation of the modifying phrase "with responsibility for the administration of juvenile justice" is weak evidence for the proposition that the word "agency" should be interpreted outside its ordinary meaning.

The government also makes the related argument that the phrase "governmental agency" should be interpreted to include juvenile courts because the phrase is modified by the word "any." Specifically, the government appears to argue that by using the phrase "any governmental agency," what Congress intended to say was "all governmental entities." This argument is just like the previous one, but weaker still. "Entity" is still not a synonym for "agency." It is quite reasonable to infer that Congress, by use of the word "any," was referring to any agency ordinarily referred to as an agency. As such, use of the word "any" to modify "governmental agency" is also weak evidence for the proposition that the phrase should be interpreted outside its ordinary meaning.

---

[13] *See Court*, Black's Law Dictionary (6th ed. 1990) (defining "court" as "a body organized to administer justice[.]").

12

Finally, we will address the purpose argument. Congress's stated purpose in authorizing the Attorney General to bring lawsuits under Section 12601 was "to eliminate the pattern or practice" of denying juveniles their constitutional and statutory rights. 34 U.S.C. § 12601(b). The government argues that because juvenile courts are a central part of the juvenile justice system, interpreting Section 12601 to exclude juvenile courts would "effectively vitiate" the purpose of the statute. *See also* Scalia & Garner, *Reading Law* at 63 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."). However, "no law pursues its purpose at all costs, and . . . the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." *Rapanos v. United States*, 547 U.S. 715, 752 (2006) (plurality op.). 34 U.S.C. § 12601 has a clear textual limitation in the form of the word "agency." Moreover, given that the government can presumably still bring Section 12601 lawsuits against many other entities in the juvenile justice system without stretching the ordinary meaning of any words—including counties, city councils, mayors, police commissioners, correctional facilities, and youth services—we think it strains credulity to say that Congress's purpose in enacting the statute would be vitiated unless the word "agency" was interpreted outside of its ordinary meaning.

Therefore, we decline to interpret the word "agency," as it is used in 34 U.S.C. § 12601, to encompass the Youth Court. As such, the district court did not err in dismissing the Section 12601 claims brought against the Lauderdale County Youth Court judges.

## IV.

We now turn to two residual matters raised by the parties. First, we consider the question of judicial immunity. The parties dedicate considerable portions of their briefs disputing whether or not the Youth Court judges should

have judicial immunity against the specific claims made against them in his lawsuit. However, because we hold that the text of 34 U.S.C. § 12601 is not applicable to the judges of the Youth Court, we do not reach the question of judicial immunity as to any of the specific claims raised in this case.[14]

Second, we consider the question of whether this lawsuit can continue against Lauderdale County if the Youth Court judges are excluded. Before the district court, the government argued that Lauderdale County was independently liable under Section 12601 because of its budgetary authority over the Youth Court and its alleged failure to provide indigent juveniles with adequate representation. However, on appeal, the government changed course and now only argues that dismissal of the County follows dismissal of the judges, and that reversing the latter also requires reversing the former.[15] Moreover, at oral argument, counsel for the government conceded that it did not brief an independent basis for continuing the litigation against the County, and stated that if the judges are deemed to be outside of Section 12601 then the claims against the County should also be dismissed. Oral Argument at 59:00. We take the government at its word.

Therefore, because we hold that the district court did not err in dismissing the lawsuit against the judges on the basis that they are outside the scope of Section 12601, and because the government has affirmatively

---

[14] We likewise do not consider the district court's determinations regarding the *Younger* abstention and *Rooker-Feldman* arguments.

[15] In a letter filed with the court after oral argument, the government argues that if we interpret Section 12601's use of the phrase "governmental agency" to exclude the Youth Court, then we should remand to determine whether public defenders and non-judicial court personnel can be held liable under the statute. However, not only did the government fail to make that argument in its briefs, but it has also not named these persons as defendants in this litigation. As such, we decline the government's invitation to remand for that purpose, and leave it be addressed in future cases where the issue is squarely raised and litigated. *See, e.g., Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) (noting that issues not briefed will not be considered on appeal).

waived any other argument for continuing the lawsuit against the County, we affirm the dismissal of this litigation as it pertains to Lauderdale County. *See United States v. Young*, 872 F.3d 742, 747 (5th Cir. 2017) ("Waiver is the 'intentional relinquishment or abandonment of a known right.' " (quoting *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006))).

The judgment of the district court is AFFIRMED.