**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 20, 2025

*Stonec, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRURY 20, 2025

*Sarah Pendleton*
SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE HOUSING AUTHORITY OF THE COUNTY OF KING, | ) ) ) | No. 102905-5 |
| Respondent, | ) ) | En Banc |
| v. | ) ) | Filed: February 20, 2025 |
| ANDRE KNIGHT, | ) ) ) | |
| Petitioner. | ) ) ) | |

MADSEN, J.—At issue in this case is whether the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) requires landlords to provide 30 days' notice when evicting tenants for *any* reason or only for nonpayment of rent. Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. §§ 9001-9141). We hold that § 9058(c) of the CARES Act requires 30 days' notice when evicting a tenant only for failure to pay rent. Accordingly, we affirm the Court of Appeals.

BACKGROUND

Angela Knight and her two children occupied a rental unit owned and managed by the King County Housing Authority (Housing Authority). In January 2023, the Housing

Authority served a notice to vacate the unit in three days based on alleged nuisance and criminal conduct. The notice stated that this was not the first instance of nuisance and criminal conduct at the Knights' unit. The Housing Authority served multiple notices on the Knights from 2013-2018, including transferal to another unit for a "fresh start," but the nuisance and criminal activity continued. Clerk's Papers at 5.

The January 2023 notice listed specific grounds for the eviction. Knight received multiple 10-day notices to comply or vacate due to unauthorized guests residing in and disrupting the unit, as well as excessive garbage. *Id.* at 6-7 (ex. D-F) (10-day notices); *see* RCW 59.18.650(2)(b) (landlords must provide 10 days' notice to tenants to comply with rental agreement or vacate a property). The notice also listed activities occurring at the unit that resulted in three city of Kent police reports in which officers responded to shootings, recovered stolen vehicles, arrested two suspects (one of which was Knight's son, Andre), and recovered other stolen property. *Id.* at 5-7, 10-23 (ex. A-C), 36-39 (ex. G) (Kent police reports), 52-53 (ex. J) (Kent Police Department critical incident e-mail). At one point, bounty hunters attempted to enter the unit to take Andre Knight into custody for outstanding warrants. In addition, the unit contained evidence of drug activity, bullet holes, and dog feces, and was missing smoke detectors when police and Housing Authority representatives entered it in January 2023, prior to issuing the vacate notice. *Id.* at 7-8, 54-61 (ex. K).

Three days after notice was served, the Knights had not vacated the unit. The Housing Authority then filed a complaint for an unlawful detainer and motion to show

cause.  After a hearing, at which the Knights were not present, a commissioner of the King County Superior Court concluded that the property fell under the CARES Act's 30-day notice requirement for evictions.  Because Knight was provided only 3 days' notice to vacate, the commissioner denied the unlawful detainer petition and dismissed the eviction action without prejudice.  The Housing Authority appealed.  Notation Ruling, No. 85031-8-I (Wash. Ct. App. Apr. 4, 2023).

While the Housing Authority's appeal was pending, Division Two of the Court of Appeals held that the CARES Act's notice requirement applies to all evictions in *Pendleton Place, LLC v. Asentista*, 29 Wn. App. 2d 516, 526, 541 P.3d 397 (2024).  In Knight's case a month later, Division One disagreed and held that the 30-day requirement is limited to evictions for failure to pay rent.  *Hous. Auth. v. Knight*, 30 Wn. App. 2d 95, 117, 543 P.3d 891 (2024).

Andre Knight learned of the case, retained the King County Housing Justice Project to represent him, and sought discretionary review here.  We granted review primarily to resolve the conflict between Divisions One and Two of the Court of Appeals.[1]  *Hous. Auth. v. Knight*, 3 Wn.3d 1007 (2024).  We have received amicus curiae

---

[1] At oral argument, both parties urged the court to decide this case under the public interest exception to mootness given the split in the Court of Appeals, and argued that the notice requirement remains in effect.  Wash. Sup. Ct. oral arg., *Hous. Auth. v. Knight*, No. 102905-5 (Nov. 21, 2024), at 1 min., 44 sec.; 2 min., 09 sec.; 18 min., 41 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024111173/?eventID=2024111173.  We agree.

briefs from the Rental Housing Association of Washington and the Legal Aid of Southeast and Central Ohio.

ANALYSIS

A. Evictions in Washington

The issue presented, whether § 9058's notice provision applies to all evictions, is one of first impression. Because Knight was evicted under Washington State statutory landlord-tenant provisions, it is useful to briefly review our state eviction process before addressing the federal CARES Act.

In Washington, a tenant must pay the rental amount provided in a rental agreement and comply with all obligations imposed by the applicable provisions of law. RCW 59.18.130. Among other things, tenants may not "permit a nuisance" on the property. RCW 59.18.130(5). A tenant is liable for unlawful detainer if they continue in possession of a rental property after they commit or permit waste upon the premises and remain in possession after service of three days' notice to quit. RCW 59.18.650(1), (2)(c); RCW 59.12.030(5). For nonpayment of rent, a tenant is liable for unlawful detainer if they continue in possession after notice to pay or vacate. RCW 59.18.650(2)(a). An "unlawful detainer" is a summary proceeding that provides an expediated form of relief to recover rental premises and resolve claims of possession between landlords and tenants. *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019).

In short, a landlord may begin eviction proceedings against a tenant who commits waste upon a premise and unlawfully remains on that premise after providing three days' notice to vacate. *See Hous. Auth. v. Terry*, 114 Wn.2d 558, 563-64, 789 P.2d 745 (1990) (holding that "a landlord must comply with the [statutory] requirements" to utilize the unlawful detainer process).

After serving notice, the next stage of the eviction process is the filing of a complaint and summons. RCW 59.18.365; RCW 59.12.060, .080. To evict a tenant, a landlord may apply for a writ of restitution. RCW 59.18.370. To obtain a writ of restitution, the "landlord must apply for an order for a show cause hearing." *Randy Reynolds*, 193 Wn.2d at 157. At the show cause hearing, the court will determine if the landlord is entitled to a writ of restitution before a trial on the complaint and any answer is filed. RCW 59.18.380. If a material factual issue exists, the parties proceed to trial on the complaint. *Id*.

Federal, state, and local governmental regulations may affect a landlord's ability to evict tenants. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE § 6.84, at 453 (2d ed. 2004).

B. The CARES Act

The federal CARES Act was enacted in response to the economic disruption caused by the COVID-19 pandemic. *Sherwood Auburn, LLC v. Pinzon*, 24 Wn. App. 2d 664, 671-72, 521 P.3d 212 (2002). The CARES Act was passed quickly by Congress weeks after the pandemic began. *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5

F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring) (noting that on "March 21, 2020,

just two days after California announced the country's first statewide stay-at-home order,

Congress passed [the CARES Act]").  The CARES Act provides certain protections for

tenants living in housing units owned and maintained by lessors or landlords receiving

federal funds.  15 U.S.C. § 9058.  That is, the CARES Act protections apply to tenants

living in a dwelling on "covered property," defined as any property that participates in a

covered housing program or a rural housing voucher program, or that has a federally

backed mortgage loan.  15 U.S.C. § 9058(a)(1), (2)(B).

> The relevant notice provision is located in § 9058.  The statute provides,

> § 9058. Temporary moratorium on eviction filings
> (a) Definitions
>     . . . .
> (b) Moratorium
>     During the 120-day period beginning on March 27, 2020, the lessor of a
>     covered dwelling may not—
>         (1)      make, or cause to be made any filing with the court of
>     jurisdiction to initiate a legal action to recover possession of the covered
>     dwelling from the tenant *for nonpayment of rent* or other fees or
>     charges; or
>         (2)      charge fees, penalties, or other charges to the tenant related
>     to such nonpayment of rent.
> (c) Notice
>     The lessor of a covered dwelling unit—
>         (1)      may not require the tenant to vacate the covered dwelling unit
>     before the date that is 30 days after the date on which the lessor
>     provides the tenant with a notice to vacate; *and*
>         (2)      may not issue a notice to vacate under paragraph (1) until
>     after the expiration of the period *described in subsection (b)*.

15 U.S.C. § 9058 (emphasis added) (boldface omitted).

1. The plain language of § 9058(c)'s notice requirement

Interpretation of a statute is a question of law that we review de novo. *Anthis v. Copland*, 173 Wn.2d 752, 755, 270 P.3d 574 (2012). Our fundamental objective when interpreting a federal statute is to ascertain Congress's intent in enacting it. *First-Citizens Bank & Tr. Co. v. Harrison*, 181 Wn. App. 595, 602, 326 P.3d 808 (2014) (citing *Parsons v. Comcast of Cal./Colo./Wash. I, Inc.*, 150 Wn. App. 721, 726-27, 208 P.3d 1261 (2009)). Traditional rules of statutory interpretation apply. *Id.*

When statutory language is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). A statute's plain meaning may be discerned from "all that the Legislature has said in the statute and related statutes." *Id.* at 11. We look to the language of a statute, the context in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

Knight advocates for a broad reading of § 9058(c)(1). In Knight's view, the conclusion that the CARES Act imposes a permanent, 30-day notice provision for all evictions is simple. A landlord "may not require" a "tenant to vacate the covered dwelling unit" until providing "30 days" of notice. 15 U.S.C. § 9058(c)(1). Echoing Division Two in *Asentista*, Knight emphasizes that § 9058(c)(1) contains no language "limiting its applicability to eviction[s] related to nonpayment of rent." 29 Wn. App. 2d at 523. Rather, the provision "broadly referred to any notice from the landlord to vacate,

irrespective of the reason." Suppl. Br. of Pet'r at 10-11. Put another way, subsection (c)(1) is silent as to the type of eviction triggering the 30-day notice requirement. The Housing Authority, in contrast, urges that subsection (c)(1) must be read in conjunction with subsection (c)(2), which refers back to subsection (b)(1)'s limitation to nonpayment of rent.

We must interpret a statute's terms "in the context . . . in which they appear, not in isolation." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). We read statutory provisions together and construe the statute as a whole. *Hubbard v. Dep't of Lab. & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000).

Subsection 9058(c) contains two paragraphs. Paragraph (1) precludes landlords from requiring a tenant to vacate prior to providing 30 days' notice. 15 U.S.C. § 9058(c)(1). Paragraph (2) provides that such notice cannot be issued until after the 120-day moratorium expires as set out in subsection (b). 15 U.S.C. § 9058(c)(2). These two paragraphs are connected with the word "and." We presume lawmakers use the term "and" conjunctively. *State v. Hodgins*, 190 Wn. App. 437, 443-44, 360 P.3d 850 (2015) (citing *State v. Tiffany*, 44 Wash. 602, 603-04, 87 P. 932 (1906); *State v. Irizarry*, 111 Wn.2d 591, 602, 763 P.2d 432 (1988) (Callow, J., concurring in part, dissenting in part)). Thus, the plain language of subsection (c)(1) connects its 30-day notice provision to subsection (c)(2). In turn, the plain language of subsection (c)(2) ties the notice requirement of subsection (c)(1) to the failure to pay rent provision in subsection (b)(1).

8

Reading the provisions together, subsection (b)'s 120-day moratorium must expire before landlords may issue an eviction under subsection (c)(1). The moratorium is limited to evictions for nonpayment of rent. 15 U.S.C. § 9058(b). Thus, subsection (c)(2)'s reference to subsection (b) indicates that Congress intended to limit the 30-day notice requirement, namely to evictions for failure to pay rent.

Significantly, the notice provision is located in the section titled "Temporary moratorium on eviction filings." 15 U.S.C. § 9058. Unlike captions generated by our state code reviser, section headings adopted as a part of a statute may be referred to as a source of legislative intent. *State v. Chhom*, 162 Wn.2d 451, 460 n.3, 173 P.3d 234 (2007). Federal courts have looked to section headings in federal legislation for "clues" to congressional intent. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380, 138 S. Ct. 883, 200 L. Ed. 2d 183 (2018) (recognizing that section headings cannot limit the plain meaning of statute but "'they supply cues'" as to what Congress intended (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S. Ct. 2326, 171 L. Ed. 2d 203 (2008), and quoting *Yates v. United States*, 574 U.S. 528, 540, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015))). Here, the section heading adopted in the CARES Act emphasizes the limited time frame of the eviction moratorium and, by implication, the *basis* of the paused evictions—nonpayment of rent. 15 U.S.C. § 9058(b), (c)(2). Interpreting the 30-day notice requirement as applying to nonpayment of rent connects § 9058(c)(2) to its section heading, whereas applying the notice to *all* evictions disconnects the subsection from the heading.

The context of the CARES Act also demonstrates that it was intended primarily to provide *economic* support to tenants during an emergency situation, not to alter the general eviction laws of every state. As Division One reasoned below, the short title of the CARES Act is the "Coronavirus Aid, Relief, and *Economic Security* Act," which is further split into divisions relating to economics: "Keeping *Workers Paid and Employed*, Health Care System Enhancements, and *Economic Stabilization*" and "Emergency Appropriations for Coronavirus Health Response and Agency Operations." *Knight*, 30 Wn. App. 2d at 104 (quoting 134 Stat. at 281, 285). Section 9058 is located in Title IV, "Economic Stabilization and Assistance to Severely Distressed Sectors of the United States Economy," within "Subtitle A—Coronavirus Economic Stabilization Act of 2020." *Id.* While the CARES Act contains topics other than economics, as does any omnibus legislation, its short title, divisions, and other titles relate primarily to economic stabilization, financial assistance, and monetary relief. *Id.* at 105-06. This context supports Congress's intent to provide relief to tenants during the pandemic via limiting evictions for the economic reason of failure to pay rent.

A handful of courts from other jurisdictions have considered the issue and agree with the plain language analysis, though they are largely unpublished and do not comprehensively analyze the notice requirement's statutory language. *See id.* at 109-111 (discussing *W. Haven Hous. Auth. v. Armstrong*, No. NHHCV206013057S, 2021 WL 2775095, at *3 (Conn. Super. Ct. Mar. 16, 2021) (unpublished) (Connecticut trial court concluding § 9058's plain language did not require providing 30 days' notice to evict

based on nuisance); *Watson v. Vici Cmty. Dev. Corp.*, No. CIV-20-1011-F, 2022 WL 910155 (W.D. Okla. Mar. 28, 2022) (court order) (federal court in Oklahoma implicitly concluded the 30-day notice applied only to vacate for nonpayment of rent); *CP Com. Props., LLC v. Sherman*, 53,897 (La. App. 2 Cir. 4/14/21), 318 So.3d 445 (Louisiana court holding the same)).

At least one federal executive agency agrees with a limited reading of § 9058(c). The Rural Housing Service of the United States Department of Agriculture (USDA) issued a final rule amending its program on housing loans and grants to require recipients to provide tenants with 30 days' notice prior to an "eviction action for nonpayment of rent, as statutorily required by the" CARES Act. 7 C.F.R. § 3560. The rule explains "[t]he requirement to provide 30 days' notice prior to eviction for nonpayment of rent is statutory and has been in effect since the enactment of the CARES Act on March 27, 2020." *Id.* The final rule's 30-day notification requirement for failure to pay rent "is consistent with this requirement of the CARES Act, where 'The lessor of a covered dwelling unit [. . .] may not require the tenant to vacate . . . before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate.'" *Id.* (first alteration in original) (quoting 15 U.S.C. § 9058(c)(1)). The USDA's housing division interpreted subsection (c)'s 30-day notice provision as applying to evictions for defaulting on rent. We afford an agency interpretation deference, provided it aligns with the plain language of the statute. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151

Wn.2d 568, 612, 90 P.3d 659 (2004).  As discussed above, the USDA's interpretation aligns with the plain language of 15 U.S.C. § 9058(c).

In support of his reading, Knight primarily contends that the notice provision is freestanding and that it effectively *extended* the moratorium to all evictions during the 120-day period.  *See* Wash. Sup. Ct. oral arg., *Housing Auth. v. Knight*, No. 102905-5 (Nov. 21, 2024), at 10 min., 39 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/washington-state-supreme-court-2024111173/?eventID=2024111173.  In Knight's view, a tenant could not be evicted during subsection (b)'s moratorium for nonpayment of rent but, without subsection (c)(1), could be evicted for a "pretextual" reason, allowing the landlord to evade the moratorium.  *Id*. at 8 min., 18 sec.  Thus, subsections (b) and (c)(1) prevented the commencement of all evictions for 120 days, and, after that period ended, all evictions require 30 days' notice.  *See id*. at 11 min., 53 sec.

Knight's reading, however, renders subsection (b) either incomplete or meaningless.  First, during the moratorium, landlords would have to consult more than the subsection specifically titled "Moratorium."  To understand what they *could not* do, landlords would have had to consult the "Notice" subsection as well to learn that though subsection (b) precluded evictions only for nonpayment of rent, subsection (c)(1) expanded the types of evictions to include all evictions.  But if (c)(1) indeed applies to *all* evictions, it necessarily includes evictions for failure to pay rent.  Congress would have no reason to specify that subsection (b)'s 120-day moratorium was restricted to evictions

for nonpayment of rent. Knight's interpretation makes the statutory language on nonpayment meaningless, and we must interpret statutes such that no provision is rendered meaningless or superfluous. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996).

Further, Knight argues that because subsections (b) and (c) contain different terms, we must interpret them differently. Subsection (b) pauses the time where a lessor may make "any *filing*" to begin an eviction for failure to pay rent, while subsection (c) lacks this term. 15 U.S.C. § 9058(b) (emphasis added). But subsection (c)(2) *encompasses* the term when it expressly references subsection (b). Read together, the provision states that a landlord may not issue a notice to vacate without providing 30 days' notice until the expiration of the 120-day moratorium on making any filing initiating an eviction for failure to pay rent. 15 U.S.C. § 9058(b)-(c).

2. The clear statement rule supports a narrow interpretation of § 9058(c)

Because we are interpreting a federal statute, we also consider an additional tenet applied by the United States Supreme Court: the clear statement federalism rule.

The clear statement federalism rule is a canon of interpretation that requires Congress to make its intent "'unmistakably clear' when enacting statutes that would alter the usual constitutional balance between the Federal Government and the States." *Hayden v. Pataki*, 449 F.3d 305, 323 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991)).

13

Relevant to the present case is the "well-established principle that 'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' the 'usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858, 134 S. Ct. 2077, 189 L. Ed. 2d 1 (2014) (internal quotation marks omitted) (quoting *Gregory*, 501 U.S. at 460). When legislation will influence "the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *United States v. Bass*, 404 U.S. 336, 349, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971).

The United States Supreme Court has applied the clear statement federalism rule when interpreting statutes touching on areas of "traditional state responsibility." *Bond*, 572 U.S at 858 (citing *Gregory*, 501 U.S. at 460 (qualifications for state officers); *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 544, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994) (titles to real estate); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174, 121 S. Ct. 675, 148 L. Ed. 2d 576 (2001) (land and water use)). Here, the area of traditional state responsibility is the landlord-tenant relationship. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764, 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021); *Lindsey v. Normet*, 405 U.S. 56, 68-69, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972).[2] Courts

---

[2] Numerous courts have recognized that landlord-tenant law is an area traditionally regulated by state and local governments and one that has never been federalized. *E.g.*, *Chateau Foghorn LP v. Hosford*, 455 Md. 462, 490-91, 168 A.3d 824 (2017) (citing *Lindsey*, 405 U.S. at 68 (holding that "[t]he Constitution has not federalized the substantive law of landlord-tenant relations" (alteration in original)); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440, 102

avoid reading statutes to have such reach without "'exceedingly clear language'" from Congress. *Ala. Ass'n of Realtors*, 594 U.S. at 764 (quoting *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 140 S. Ct. 1837, 1849-50, 207 L. Ed. 2d 186 (2020)).

Knight argues that the clear statement rule is inapplicable because, unlike other housing statutes, the CARES Act uses broad language and contains no exceptions for different eviction timelines. *See* Pet'r Andre Knight's Suppl. Br. at 14-15, 26 (citing 42 U.S.C.A. § 12755(b); 42 U.S.C.A. § 1437d(*l*)(4); Protecting Tenants at Foreclosure Act (PFTA), Pub. L. No. 111-22, 123 Stat. 1632 (2009)).[3] But in *Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S. 119, 139, 125 S. Ct. 2169, 162 L. Ed. 2d 97 (2005) (partial plurality), the Supreme Court recognized that "clear statement rules ensure Congress does not, *by broad or general language*, legislate on a sensitive topic inadvertently or without due deliberation." (Emphasis added.) That is, broad or general language alone is insufficient to show clear congressional intent. *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 746, 142 S. Ct. 2587, 213 L. Ed. 2d 896 (2022) (Gorsuch, J., concurring)

---

S. Ct. 3164, 73 L. Ed. 2d 868 (1982) (noting that "[t]his Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular"); *Hous. & Redevelopment Auth. v. Lee*, 832 N.W.2d 868, 873 (Minn. Ct. App. 2013) (holding that "regulation of landlord-tenant relations is a traditional area of state concern"), *aff'd on other grounds*, 852 N.W.2d 683 (Minn. 2014).

[3] In 2018, Congress revived the PTFA of 2009, which originally expired in 2014. *See* Economic Growth, Regulatory Relief, and Consumer Protection Act, Pub. L. No. 115-174, 132 Stat. 1296 (2018).

(cautioning against reliance on "'broad or general language'" (quoting *Spector*, 545 U.S. at 139)).[4]

The federal statutes Knight cites in support instead demonstrate that Congress is aware of the clear statement rule and has shown its intent in statutory language to intrude or *not intrude* on the sensitive topic of the landlord-tenant relationship. The PFTA requires that "*any* foreclosure on a federally-related mortgage loan or on any dwelling or residential real property" requires provision of "a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice." 123 Stat. at 1660-61, § 702(a)(1)-(2) (emphasis added). Subsection 12755(b) provides, "*Any* termination or refusal to renew [a tenancy] must be preceded by not less than 30 days . . . of a written notice." 42 U.S.C. § 12755(b) (emphasis added). Importantly, §1437d(*l*)(4) requires a public housing agency to provide adequate written notice when terminating a lease of 14 days for nonpayment of rent and 30 days "in any other case, *except* that if a State or local law provides for a shorter period of time, *such shorter period of time shall apply*." 42 U.S.C. § 1437d(*l*)(4)(B)-(C) (emphasis added). In addition to the expansive term "any," the PFTA explicitly recognizes federalism—declining to override local laws that provide shorter notice periods. 42 U.S.C. § 1437d(*l*)(4)(B)-(C) shows that Congress is more than

---

[4] The parties also disagree whether the clear statement rule is confined to construing ambiguous provisions. In *Spector*, the Supreme Court applied the clear statement rule to an unambiguous statute, and in *Hayden*, 449 F.3d at 325, the Second Circuit Court of Appeals held the rule "does not require courts engaged in statutory interpretation to search for a construction of the statute that will not affect the federal balance, but rather, reveals the canon to be a *default rule*." (Emphasis added.) Based on *Spector* and *Hayden*, we assume without deciding that the clear statement federalism rule operates as a tool to discern congressional intent and may be applied to an unambiguous statute.

capable of regulating in the sensitive area of housing and landlord-tenant while respecting federalism.

As noted, the clear statement federalism rule requires Congress to make its intent "'unmistakably clear' when enacting statutes that would alter the usual constitutional balance between the Federal Government and the States." *Hayden*, 449 F.3d at 323 (internal quotation marks omitted) (quoting *Gregory*, 501 U.S. at 460). Knight's interpretation of the notice requirement would significantly alter this balance. *See Gregory*, 501 U.S. at 460-61. Subsection 9058(c) implicates a State's authority to craft landlord-tenant law and the regulation of housing within a state. Though rental housing has been "increasingly regulated" by Congress, states retain the broad power to regulate their own landlord-tenant relationships. *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 543, 484 P.3d 1251 (2021); *Loretto*, 458 U.S. at 440 ("[t]his Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular").

Knight points out that other courts have questioned the broad application of the clear statement rule as set out in *Gregory*. Pet'r Andre Knight's Suppl. Br. at 5-7 (citing *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1152 (9th Cir. 2013) ("In *Gregory v. Ashcroft*, the Court does not indicate that the clear statement rule applies to any and all regulation of state governmental functions."); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14, 133 S. Ct. 2247, 186 L. Ed. 2d 239 (2013) (declining to apply *Gregory* in a preemption challenge to Congress's authority under the elections

clause)).  Despite some lower court uncertainty as to what constitutes a state function

under *Gregory*, the Supreme Court recognizes the applicability of the clear statement rule

to statutes touching on areas of "traditional state responsibility," *Bond*, 572 U.S. at 858

(citing *Gregory*, 502 U.S. at 460), such as the landlord-tenant relationship.  *E.g.*, *Loretto*,

458 U.S. at 440.  Significantly, in 2021, the Court applied the major questions doctrine to

the CARES Act.  *Ala. Ass'n of Realtors*, 594 U.S. at 760, 764.  Reviewing a challenge to

the United States Centers for Disease Control and Prevention's extension of the 120-day

eviction moratorium past its statutory expiration date, *id.* at 760, the Court noted that the

moratorium "intrudes into an area that is the particular domain of state law: the landlord-

tenant relationship." *Id*. at 764.  Though the specific issue in *Alabama Ass'n of Realtors*

concerns an agency's (lack of) authority to extend the 120-day moratorium, the Court had

no reservation about applying a clear statement rule to the CARES Act.

All states require notice prior to commencing the eviction process.  Suppl. Br. of

Pet'r Andre Knight at 14 n.1 (citing 49 state eviction provisions).  Accepting Knight's

reading of § 9058(c) would override the eviction regimes not only for Washington but

every state and would impose a *permanent* federal notice requirement for *all* types of

evictions.  But for Knight's interpretation, these eviction regimes would apply to

landlords receiving federal funds.[5]  Indeed, as Knight stated at oral argument, a broad

---

[5] Knight responds that "there is no presumption in favor of state power" in areas where Congress has a "'significant federal presence,'" such as subsidized housing.  Pet'r Andre Knight's Suppl. Br. at 7 (regarding the clear statement rule (quoting *United States v. Locke*, 529 U.S. 89, 108, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000))).  Knight argues that Congress has a significant presence of regulating housing through the spending clause and application of the clear statement

reading of the CARES Act notice provision would not be limited to state eviction regimes but would abrogate sub silentio all other applicable federal eviction timelines. *See* Wash. Sup. Ct. oral arg., *supra*, at 40 min., 40 sec. We disagree that Congress would abrogate a wide range of federal eviction timelines without a plain indication of support in the CARES Act.

We conclude that the statutory terms of the notice provision manifest Congress's intent to alter the balance of state and federal power for the limited reason of failure to pay rent. *See Gregory*, 501 U.S. at 460. Accordingly, we affirm the Court of Appeals.

CONCLUSION

The plain language of § 9058(c) demonstrates Congress's intent to limit the 30-day notice to evictions for failure to pay rent. Related statutes, the context of the provision, federal agency interpretation, and authorities from other jurisdictions reinforce the plain language. Further, the clear statement rule requires Congress to make its intent "unmistakably clear" when intruding on an area traditionally regulated by the states such as the landlord-tenant relationship. That rule supports a narrower reading, limited to

---

rule to federal housing statutes would "pit one constitutional value against another: federalism" and Congress's spending power. *Id.* at 20-22. While the Supreme Court has not applied the clear statement rule to federal housing statutes, Knight is incorrect that it plays no role under the spending clause. "[I]f Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" *South Dakota v. Dole*, 483 U.S. 203, 207, 107 S. Ct. 2793, 97 L. Ed. 2d 171 (1987) (alterations in original) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981)). This limitation requires Congress to be "clear about the obligations it is imposing" on states and takes the form of a "'clear statement' rule." Terry J. Seligmann, *Muddy Waters: The Supreme Court and the Clear Statement Rule for Spending Clause Legislation*, 84 TUL. L. REV. 1067, 1069 (2010).

nonpayment of rent.  Accordingly, we affirm the Court of Appeals and remand the case for further proceedings consistent with this opinion.

_____
Madsen, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Vanderwood, J.P.T.